IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 19 2008

Clerk, U.S. District and
Bankruptcy Courts

~~JOHN~~ FLYNN, ~~JAMES BOLAND~~, GERALD
~~O'MALLEY, KEN LAMBERT~~, GERARD SCARANO,
H. J. BRAMLETT, ~~EUGENE GEORGE~~, ROBERT
HOOVER, ~~MATTHEW AQUILINE~~, GREGORY R.
HESS, MICHAEL SCHMERBECK, ~~VINCENT~~
~~DELAZZERO~~, BENJAMIN CAPP, and WILLIAM
MCCONNELL
as Trustees of, and on behalf of, the
BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND
    620 F Street, N.W.
    Washington, DC  20004
    (202) 783-3788,

and

)
)
)
)
)
)
)
)
)
)
)
)

Case: 1:08-cv-00858
Assigned To : Friedman, Paul L.
Assign. Date : 5/19/2008
Description: Labor-ERISA

JIM ALLEN, ~~MATTHEW AQUILINE~~, LON BEST,
~~JAMES BOLAND~~, TED CHAMP, RAYMOND
CHAPMAN, ~~VINCENT DELAZZERO~~, BRUCE
DEXTER, ~~JOHN FLYNN, EUGENE GEORGE~~,
GREGORY HESS, FRED KINATEDER, DAN
KWIATKOWSKI, ~~KEN LAMBERT~~, SANTO
LANZAFAME, DICK LAUBER, WILLIAM
MCCONNELL, EDWARD NAVARRO, GERALD
O'MALLEY, JOHN PHILLIPS, CHARLES RASO,
MARK ROSE, KEVIN RYAN, GERARD SCARANO,
MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH
SPERANZA, and FRED VAUTOUR
as Trustees of, and on behalf of, the
INTERNATIONAL MASONRY INSTITUTE
    620 F Street, N.W.
    Washington, DC  20004
    (202) 783-3788,

                Plaintiffs,

                v.

DOOLEY & KRETSCHMAN, INC.
    c/o Paul Bucco, Esq.
    Davis, Bucco & Ardizzi P.C..
    Agent for Service of Process
    300 Berkshire Way
    Marlton, NJ  08035,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No:

2415552

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2. The IPF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### Parties

3. Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Robert Hoover, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero, Benjamin Capp, and William McConnell, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the

2

meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.    The IPF also is authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.    Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.    Defendant, Dooley & Kretschman, Inc. ("Dooley & Kretschman" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of New Jersey.

7.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

3

2415552

## Violation Charged

8.      Dooley & Kretschman acting through its authorized agents or officers, is bound to the following agreements with the Union:  (A) A collective bargaining agreement, executed by Defendant, covering the time period November 1999 through October 2002 ("1999 – 2002 Agreement"), annexed hereto as Exhibit A; (B) a Memorandum of Understanding executed by authorized representatives of the Building Contractors Association of New Jersey, the Masonry Contractors of New Jersey, and all affiliated local associations, on behalf of and for these associations' members, modifying and extending the terms of 1999 – 2002 Agreement through October 2007, annexed hereto as Exhibit B; (C) a collective bargaining agreement with the Union, executed by Defendant, covering the time period November 2002 through October 2007 ("2002 – 2007 Agreement"), annexed hereto as Exhibit C.  The 1999 – 2002 Agreement, 2002 – 2007 Agreement, and the Memorandum of Understanding are hereinafter referred to as the "Agreements."

9.      Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF and IMI for covered work performed by employees of Defendant.

10.      Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.      An examination of Defendant's books and records performed by the independent accounting firm of Ennis Prezioso & Company, LLC, covering the time period January 2001 through June 2003 revealed that Defendant failed to properly submit required reports and contributions for work performed during this time period.

12.      The total contributions due the IPF and IMI by Defendant for work performed during the months of January 2001 through June 2003 as determined by the Audit amounts to $15,806.44.

4

13.    Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, the Collection Procedures, and ERISA, interest in the amount of $4,470.14, and an additional computation of interest in the amount of $4,470.14, calculated at the rate of 15 percent per annum from the Due Date, have been assessed on such delinquent contributions determined due by the Audit.

14.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $42,431.04, which is constituted as follows:

a.   For unpaid contributions in the amount of $15,806.44 payable to the IPF and IMI for the time periods specified above, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); Collection Procedures);

b.   For interest in the amount of $4,470.14 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

c.   For an additional computation of interest in the amount of $4,470.14, assessed on such unpaid contributions, calculated at the rate of 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(ii); Collection Procedures);

d.   For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

e.   For the costs of conducting the audit in the amount of $17,334.32 (ERISA Section 502(g)(2)(D));

5

2.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.  That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF and IMI, and to pay the costs and disbursements of this action.

4.  Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: May ___, 2008

By: _____
Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
  DICKSTEIN SHAPIRO LLP
  1825 Eye Street, N.W.
  Washington, DC 20006
  (202) 420-2200

Attorneys for Plaintiffs

6

2415552

## I. (a) PLAINTIFFS

JOHN FLYNN, et al.

11001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

DOOLEY & KRETSCHMAN, INC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Case: 1:08-cv-00858
Assigned To : Friedman, Paul L.
Assign. Date : 5/19/2008
Description: Labor-ERISA

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ◉ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

/ 1

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 5/19/08   SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

NJ 9997

# AGREEMENT BETWEEN

### BUILDING CONTRACTORS ASSOCIATION OF NEW JERSEY

### OTHER SIGNATORY EMPLOYERS

**-and-**

### LOCAL UNION NOS. 4 & 5
### OF THE
### INTERNATIONAL UNION OF
### BRICKLAYERS AND ALLIED CRAFTWORKERS

*November 1, 1999 through October 31, 2002*





FILED

MAY 19 2008

Clerk, U.S. District and
Bankruptcy Courts

NJ9997

# Table of Contents

|  | ARTICLE NO. | PAGE NO. |
|---|---|---|
| Apprentices | VII | 13 |
| Duration/Termination/Amendment | II | 1 |
| Foremen | VIII | 14 |
| General Understanding | XXI | 30 |
| Grievance Procedure | XV | 26 |
| Hiring Preference | V | 12 |
| Hours Work, Overtime, Shifts, Holidays | XII | 21 |
| Jointly Trusteed Funds | XI | 15 |
| More Favorable Conditions | XX | 30 |
| No-Strike/No-Lockout | XVIII | 29 |
| Parties | I | 1 |
| Payment of Wages & Fringe Benefits | XIII | 23 |
| Preservation of Work | XVII | 29 |
| Scope of Work | III | 1 |
| Separability and Savings Provision | XIX | 30 |
| Stewards | VI | 13 |
| Subcontracting | XVI | 28 |
| Traveling Contractors | IX | 14 |
| Union Recognition, Union Security Access | IV | 12 |
| Wages, BACPAC, and Local Dues Checkoff | X | 15 |
| Working Conditions | XIV | 23 |

NJ9997

# AGREEMENT BETWEEN
## BUILDING CONTRACTORS ASSOCIATION OF NEW JERSEY
## OTHER SIGNATORY EMPLOYERS
### -and-
## LOCAL UNION NOS. 4 & 5
## OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED
## CRAFTWORKERS

## ARTICLE I
## PARTIES

This Agreement is entered into this *first day of November 1999,* by and between the Building Contractors Association of New Jersey, (hereinafter referred to as the Association), for and on behalf of its members as set forth in Schedule "A" attached hereto and other contractors who are signatory hereto or who may become signatory hereto (hereinafter referred to as the Employer), and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NOS. 4 & 5 (hereinafter referred to as the Union).

The Association agrees to furnish to the Union a list of all members of the Association denoting those members bound to the terms of this Agreement, the honorary members, independent members, and any other classes or groups of members.

## ARTICLE II
## DURATION - TERMINATION - AMENDMENT

This Agreement shall be effective commencing *November 1st, 1999* and shall continue in full force and effect up to and including *October 31, 2002,* and shall be automatically continued for each successive period of this Collective Bargaining Agreement unless written notice of decision to negotiate a new Agreement in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter. If the parties fail to reach an agreement in such negotiations, the issues in dispute shall be submitted to the International Masonry Institute's Dispute Settlement Plan for such steps as are deemed appropriate in accordance with the procedures of the Plan. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not affect the continuing nature of this Agreement.

## ARTICLE III
## SCOPE OF WORK

A.    This Agreement shall cover new construction, maintenance, repair and renovation in the State of New Jersey.

NJ 9997

B.    The Employers bound hereby recognize the Union's claim to all work falling within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference.

C.    The installation of Brick and all other masonry units such as blocks, etc., with or without mortar, anywhere on the project shall be the work of Bricklayers & Allied Craftworkers of International Union, Local Nos. 4 & 5.

D.    Temporary heat, applicable to all branches of the trade, to protect any Masonry work performed and shall include all masonry materials all year, especially in the winter months (November 15th through March 15th).

### Brick Masonry

A.    Bricklaying masonry shall consist of, but not limited to, the following work procedures and installation of the following materials: The laying of bricks made from any material in, under or upon any structure or form of work where bricks are used, whether in the ground, or over its surface, or beneath water, in commercial buildings, rolling mills, iron works, blasts or smelter furnaces, lime or brick kilns, in mines or fortifications and in all underground work, such as sewers, telegraphy, electric and telephone conduits; including the installation of substitutes for brick such as all carbon materials, Karbate, Impervite or mixtures, all acid resistant materials, all terra cotta and porcelain materials, except where the foregoing materials are manufactured to substitute for tile as provided for under the category of Section 8, C of the Codes of the International Union of Bricklayers and Allied Craftworkers. All cutting of joints, pointing, cleaning and cutting brick walls, fireproofing, block, arching terra cotta cutting and setting, the laying and cutting of all tile, plaster, mineral wool, cork, blocks and glass masonry or any substitutes for the above material, the laying of all pipe sewers or water mains and the filling of all joints on the same when such sewers or conduits are of any vitreous material, burnt clay or cement, or any substitute material used for the above purpose, the installation of all brackets and fasteners is the work of the mason exclusively, the cutting and rubbing and grinding of all kinds of bricks and the setting of all cut-stone trimmings on brick buildings, is bricklayer's work. The preparation and erection of plastic castables or any refractory materials is bricklayer's work.

B.    Cleaning, grouting, pointing and other work necessary to achieve and complete the work under the foregoing categories, all waterproofing and black mastic waterproofing, silicone and/or substitutes sandwiched between masonry units in the interior of the wall.

C.    All terra cotta called unit tile in sizes over 6" x 12" regardless of method of installation; all quarry tile over 9"x 9" x 1 1/4" in size, split brick or quarry tile or similar material if bedded and jointed with one operation. The bedding, jointing and pointing of the above materials shall be the work of the craft installing same.

2

NJ 9994

D.    All burnt clay extruded cellular products regardless of trade name or method of installation when used as a veneer on structures; all clay products known as terra cotta tile, unit tile, ceramic veneer and machine-made terra cotta and like materials in sizes larger than 6" x 12", regardless of the method of installation. Where the preponderance of material to be installed is of the above size and when material of lesser sizes is to be used in connection therewith, the bricklayers shall install all such materials. Brick paving comes under bricklayers' trade classifications.  The parties acknowledge the Union's claim to screeding of sub base regardless of type of material used.

E.    Grouting of all Masonry Units, all Leveling Plates for steel columns, all machinery and Precast Panels shall apply to all branches of the trade.

## Stone Masonry

A.    Stone Masonry shall consist of, but not be limited to,  the following work procedures and installation of the following materials:   The laying of  all rip rap,  rubble work with or without mortar, setting all cut stone, marble, slate or stone work (meaning as to stone, any work manufactured from such foreign or domestic products as are specified and used in the interior or on the exterior of buildings by architects, and customarily called "stone" in the trade.) Cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds and joints, and range ashlar not over 10 inches in height; the dressing of all jambs, corners and ringstones that are roughly dressed upon the beds, joints or reveals and the cutting of a draft upon same for plumbing purposes only; and the cleaning, cutting of joints and pointing of stone work.

B.    This is to apply to all work in buildings, sewers, bridges, railroads, bulkheads, breakwaters, jetties, playgrounds, parks, landscaping and curbing or other public works and to all kinds of stone, particularly to the product of the locality where the work is being done. Stonemasons shall have the right to use all tools which they consider necessary in the performance of their work.

C.    Cleaning, grouting, pointing and other necessary work to achieve and complete the work under the foregoing categories.

## Artificial Masonry

A.    Artificial Masonry shall consist of, but not be limited to, the following work procedures and installation of the following materials:   The cutting, setting and pointing of cement blocks and all artificial stone or marble, either interior or exterior, when set by the usual custom of the stone mason and marble setter.  All cement that is used for backing up external walls, the building of party walls, columns, girders, beams, floors, stairs and arches and all material substituted for the clay or natural stone products, shall be handled by employees in the bargaining unit for which the highest rate of wages shall be demanded.

3

NJ 9997

B.  All artificial masonry, the cutting, setting and pointing of all concrete prefabricated slabs, regardless of dimension size, shall be the work of members of this organization, for which the regular wage scale in the jurisdiction where the work is performed shall be paid.

C.  Cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds and joints, and range ashlar not over ten inches in height, the dressing of all jams, corners and ringstones, joints, or reveals and the cutting of a draft upon same for plumbing purposes only, and the cleaning, cutting of joints and pointing of stonework.

D.  This is to apply to all work on buildings, sewers, bridges, railroads or other public works, and to all kinds of stone, particularly to the products of the locality where the work is being done and the same shall be considered stone masonry.

E.  Bricklayers and stone masons shall have the right to use all tools which they consider necessary in the performance of their work.

F.  All cement that is used for parging up external walls and block units, installing reinforcing rods and door blocks, and all grouting.

G.  The building of party walls, columns, girders, beams, floors, stairs and arches. Gypstell products and cement of precast slabs on roofs or wherever used in building construction of alterations, and all material substituted for the clay or natural stone products. All wall ties and brackets used to anchor brick, block, stone or any type of masonry whether screwed or nailed is the work of the mason, as per the 1962 agreement between the B. & A.C. and Ironworkers herein incorporated by reference.

H.  The laying out and supervising of work for or by the use of any or all of the above materials shall be done by the employees covered hereunder.

## Cement Masons Agreement

A.  Cement masonry shall consist of, but not be limited to, the following work procedures and installation of the following materials: The laying out, screeding and finishing of all cement, concrete, brown stone composition, mastic and gypsum materials, also for fireproofing, waterproofing, cement and composition base and vault lights.

B.  The cutting of all cement and concrete for patching and finishing; the bush hammering of all concrete when cast in place; the operation of cement gun, the nozzle and the finishing of all material applied by the guns, and the operation of the cement floor finishing machines. The cement mason shall have the right to use all tools necessary to complete his work.

C.  The operation of the Lazar Screed Machine shall be performed solely by the Cement Masons.

4

NJ9997.

D.    Concrete constructions, such as buildings, bridges, elevators, smokestacks, curbs, gutters, sidewalks, street paving, alleys and roofs; laying out, setting joists, strips or screed rods for work hereinafter specified; laying and finishing of cement, wearing surfaces of basements, floor yards, driveways, areas and other surfaces where cement finish is to be laid; and where strips have to be set, or material ruled down, or surfaces finished; screening of concrete or fine stuff, asphalt or other preparations that are to be troweled, floated, darbied or bull floated; troweling, floating or finishing of concrete or fire retarding material or waterproofing compound or mixtures; construction of glass vaults or sidewalks, lights, where same is set in cement; excepting the carpenter work, but including pointing, facing and finishing of the surfaces after forms are removed; leveling of all fine materials for facing same; running of all cement base; cutting; patching and finishing of concrete fireproofing on walls, beams, girders and columns; cutting facing and finishing with cement of all concrete surfaces such as arches, beams, girders, walls, pile caps, piers and columns, whether done with trowel, float, gun and nozzle, bushhammer, rubbing or other process; applying cement mortar for damp-proofing, waterproofing for sanitary purposes where not over four (4) feet high whenever cementing with the floor is done in one operation; cutting of all concrete when cement finish is applied; setting of carpet pins and sockets in cement and composition brass or other metallic or wood strips when inserted in floor during the laying of same; rodding and spreading of all concrete and spreading and finishing of all top material; setting of all strips and stakes and grade; pointing, caulking and patching around all steel or metal window frames that touch concrete; handling of the vibrator machine. Washing and treating of all cement surfaces, handling of all machines, trowel machines, riding trowel machines, apparatus or equipment of any kind in connection with or to perform any of the above functions shall be the work of the cement finisher. Any signatory contractor who subcontracts sidewalks and curbs shall, in good faith, inform the subcontractor that said work is within the jurisdiction of the    Bricklayers & Allied Craftworkers,    Local Unions No. 4 & 5.

E.    The pouring of all concrete shall require a mason.

F.    When concrete bucket is used in conjunction with a crane, all safety precautions shall be exercised.

G.    The aligning of all bolts and the setting of all plates shall be performed by the employees covered hereunder.

H.    When flat concrete arches are poured with a crane, a hopper must be used in conjunction with a concrete bucket.

I.    On all high rise buildings an exterior scaffold for the cement masons shall be erected complete with guard rails.

J.    There shall be no cutting of cement masons crews before pull up is completed.

5

NJ 9997

K.    When masons work overtime at the direction of the employer or foreman, they shall receive at least one hour's pay at the applicable overtime rate. Fractions of an hour to be considered a full hour.

L.    Overtime shall only be with the prior permission of the union and shall be equitably shared by the employees working on the job.

M.    Employees who may be required to work overtime beyond 6:00 p.m. shall be permitted to take an unpaid one-half hour meal period on the job between 6:00 p.m. and 7:00 p.m. The employer may split a crew for the dinner period.

N.    Employees discharged or laid off shall be notified and paid off one hour before such discharge or layoff. If not complied with, another hour shall be paid. The one hour notice of layoff does not apply when overtime is worked.

O.    No cement worker working alone shall use a straight edge of more than six feet in length. Where a straight edge is longer than six feet, two men shall be used on a straight edge which is between six and eleven feet in length, one additional man shall be used for every additional four feet or fraction thereof of straight edge. On power straight edges or roller-type straight edges, two men shall be utilized up to fourteen feet and one additional man shall be used for each five feet or fraction thereof.

P.    The casting and pouring of pre-cast slabs when done on the job site shall be the work of a cement mason.

Q.    Cement masons are to complete, joint and strike up their work, whether this work is done with cement or caulking compound on any other masonry material.

R.    The cement masons shall supervise the placing or pouring of all concrete. In the event there is a journeyman already working at the job site who is recognized by the Local Union as a competent cement mason, he may be assigned to such work, otherwise a cement mason shall be hired.

S.    When concrete floors are to be hand troweled, the Employer shall provide knee boards such as the type used by cement finishers to handle trowel concrete floors, such knee boards shall measure approximately 12" wide and 30" long or fraction thereof, and shall have handles.

T.    The following work shall be allotted to the cement masons only: The setting of all screeds and forms to determine the proper grade of concrete when held in place by stakes and/or spreaders shall be done by cement finishers. A screed is a strip of wood, metal, etc., used as a guide for leveling or grading a concrete floor, slab or sidewalk.

U.    Any bulkhead that is one single board in height, and that has no key attached or which is not

6

NJ 9997

notched or fitted shall be set and braced or staked by cement finishers, providing same is used as a screed. The term bulkhead shall mean a form or screed erected for the purpose of separating pours of concrete.

V.    The grinding, patching and curing of all floors, the snapping of wall ties, and patching of same and setting of expansion joints.

W.    Steps, Landings, Platforms, etc. The setting of forms for steps, landings, platforms, coping, caps and curbs, except where underforms or centers are required, and the placing of all fine materials for facing same, shall be done by cement masons.

X.    Curing and dustproofing of all floors are to be done by cement masons. All epoxy, acid and latex work will be an additional $.50 per hour above scale.

Y.    The cement mason shall have the right to use all tools necessary to complete his work. There shall be no restriction as to the use of machinery or tools.

Z.    When troweling floors with machine, changing of blades, cleaning and maintaining machine to be done by mason.

AA.    No concrete trucks, pumping machine or any other machines are to do any mixing inside any structure without proper ventilation.

BB.    Special Tools: The employer agrees to furnish the following tools for use by his employees: Respirators, goggles, boots, bull floats, brooms, brushes, power chisels, trowel machines, bushhammers, straight edges, rubber floats, rubbing stones, cover tools, special base tools and special edgers. Gloves furnished when using epoxies, acid, latex floor patching or any irritant.

CC.    All wages, waiting time and general working conditions that apply to bricklayers shall also apply to the cement mason.

## Plastering

A.    Level 5 Gypsum Board Finishing is the work of Plasterers.

Level 5 finishing as specified by the Association of the Wall and Ceiling Industries International (AWCI), Ceiling and Interior Systems Construction Association (CISCSA), Gypsum Association (GA), and Painting and Decorating Contractors of America (PDCA), in their "Levels of Gypsum Board Finish Recommended Specification."

Levels Description: All joints and interior angles shall have tape embedded in joint compound and three separate coats of joint compound applied over all joints, angles, fastener

7

NJ 9997

heads, and accessories. A thin skim board of joint compound, or a material manufactured especially for this purpose shall be applied to the entire surface. The surface shall be smooth and free of tool marks and ridges. Note: It is recommended that the prepared surface be coated with a primer/sealer prior to the application of finish paint. (See painting specification in this regard.)

The level of finish is recommended where gloss, semi-gloss, enamel or non-textured flat paints are specified or where severe lighting conditions occur.

This highest quality finish is the most effective method to provide a uniform surface and minimize the possibility of joint photographing and of fasteners showing through the final decoration.

The work jurisdiction of the plasterer under level 5: Gypsum board finishing shall be that which has heretofore been performed under this Agreement and is further set forth in constitution of the International Bricklayers and Allied Craftworkers of the United States and Canada. The parties agree to be bound by decisions rendered by the "Green Book" Decision of Record rendered by the Hearings Panel (March 1, 1978) under the plan for the settlement of jurisdictional disputes in the construction industry.

B.    All cement plastering, stone texture, stucco work, and pebble dask work, either exterior or interior, shall be done by plastering employees under this contract.

C.    All plastering, including plastering alterations and repairs, and all cement, caehstone, acoustic or any plastic substitute or artificial or imitative composition for plain surfaces or for moldings, cornices, pilasters panels, capitals, columns, bases, keystones, brackets or centers when applied on any exterior or surface in the usual method of either plastering or stuck work shall be the work of plastering employees.

D.    All ornaments including centers, brackets, trusses and keystone shall be placed in position and pointed by plastering employees who are on the job. Cast ornamentation shall be made in a Union shop. No employee shall work on any operation where the stickling of ornamentation has been sublet.

E.    All moldings, covers, arrises, chamfers and bullnoses shall run in place wherever possible with a regular mould on proper running strips. When moldings or cornices are to be ornamented proper beds shall be run to secure same.

F.    All capitals and bases shall be run on the job if practical to do so.

G.    All templates to be used by the plasterer shall be placed in position by the plasterer.

H.    All plastering shall consist of not less than three coats as scratch, brown and finish. Before

8

NJ9997

the brown coat is applied, the scratch shall be hard and set. The brown coat shall be made true with a straight edge rod in all upright and ceiling angles: the walls and ceilings shall be properly darbied and floated to an even surface and the angles cut out. The finish coat shall be properly gauged and troweled to the required surface and all angles featheredged true. All interior or exterior plastering shall be left straight and true with rod and darby; rod and darby to be furnished by the contractor. The taping and pointing of sheetrock, compo-board, plaster-board, etc., shall be the work of the plasterer.

I.  When Sprayo-Flake or similarly applied acoustics are used the applied acoustic will take the place of the finish coat and will be applied by plastering employees.

J.  The operation of all mechanical plastering or troweling machines, pertaining to plaster and all of its substitutes, shall be the work of the plasterer.

K.  All safety precautions, goggles, shields, and masks, shall be supplied by the contractor for the health and welfare of the plastering employees operating these machines.

L.  Plastering on concrete, fireproofing, brickwork or plaster boards shall be two coat work-brown and finish.

M.  The finish coat may be omitted on cellar ceilings provided the brown coat is floated to an even surface. All EIF systems and all related work.

N.  Finishing of walls and ceilings shall not be done until the screeds, cornices or covers with which they intersect are in place.

O.  Employees shall not install metal corner beads, nor shall they work on any operation where corner beads have been used to form arrises on beams or arches or corners except door or window heads or other continuous openings not over twelve (12) feet in height.

P.  On a scaffold area of one hundred and fifty (150) square feet or over, the mortar board shall be raised 30" from the scaffold on a properly constructed stand. On a scaffold area of less than 150 square feet, the mortar board shall be raised at least 12" from the scaffold on a properly constructed stand. No mortar board shall be raised on blocking, and no mortar board or gauging board shall be more than 4'6" square.

Q.  Where beams are sixteen (16) inches or over in depth, the scaffold shall be dropped to a suitable height where the plasterers may execute their work in a proper manner.

R.  Any material applied on walls by the plasterers shall not be higher than 6'6" from the floor. Where only the walls have to be plastered, a scaffold 4 planks wide and 6' from the ceiling shall be erected on which the mortar board shall be placed and raised 12" above the scaffold. Positively no hopping planks to be permitted.

9

NJ9997.

S.    There shall be a foreman plasterer on all plastering jobs. Plastering foremen shall meet the requirements for foremen as specified herein, and shall be paid as specified herein.

T.    Plastering foremen shall see that no gauging is made up later than thirty (30) minutes before 12 o'clock and thirty (30) minutes before quitting time.

U.    Plastering work, when sublet, shall be given to a subcontractor who employs employees covered under this contract.

V.    Plastering contractors shall furnish all the materials required for their work including all screed rods, cornice, rods, darbies and feather edges. No subcontractor shall contract for labor only.

W.    Synthetic Plastering Systems: The styrofoam and any other materials which is part of the system that are installed by screws, glue, masonry materials, and including Mechanical System.

## Firebrick

The matters set forth in this section are applicable solely to firebrick work.

A.    On all firebrick jobs, when working with regular firebrick and lay, the bricklayers will be permitted an additional fifteen (15) minutes to wash up or twenty-five (25) minutes when working with a carbon, acid proofing, high temperature clay or any other material out of the ordinary such as colored cements, asphalts, tars, plastics, etc. Solvent for washing up and cleaning of tools will be provided for by the employer.

A bricklayer working with carbon or acid proofing materials shall be given a minimum of five (5) minutes wash-up prior to lunch time.

B.    All scaffolding inside of furnace shall be solid nailed scaffold. Contractors to furnish safety equipment and have same on job site.

Provisions for adequate scaffolding shall be made so that the lead man does not have to climb over the wall to work on the opposite side of the wall. Adequate scaffolding shall mean standard metal tubular scaffolding or wooden scaffolding consisting of a platform of not less than 2" x 10" planks in width, and scaffolding shall remain in place until all paving has been completed.

C.    Clay shall be mixed at the furthermost location of the enclosure where refractory brick is being laid. The location to be selected as to both its physical separation from the work area and to its feasibility for performing the mixing function. In coke oven work a separate enclosure is required. All care shall be exercised to reduce dust.

10

NJ 9997

D.  When bricklayers are employed laying firebrick, the contractor shall pay for the sharpening of their tools required for the work, and all tools shall be sharpened to the satisfaction of the bricklayer. The contractor shall furnish all chisels over twelve (12) inches in length and all saws when required.

E.  On all jobs where conditions are such that a safety man is required by the owner, he shall be mutually agreed upon by the parties. For the safety of the bricklayers, said safety man must be a union bricklayer.

F.  All hot work shall be paid at the rate of double time. Fringe benefits shall be based on hours paid.

One hundred degree (100) Fahrenheit or over shall constitute hot work. When bricklayers are employed on excessive hot work, the contractor shall provide proper counter fatigue aids which shall meet the standards prescribed by the State Medical Board, shall provide proper gloves and protective materials to safeguard bricklayers when they are handling hot work, shall supply wooden shoes or facsimile when working on heated surfaces and contractors shall be responsible for tools, shoes, and clothes of bricklayers which they burn in performance of their duties on said work. Bricklayers must spell each other on all hot work.

Contractor will also be responsible for clothes, tools and/or shoes that are destroyed or damaged on jobs due to exception conditions and materials.

G.  When electrical grinding stones or carborundums are used, bricklayers shall leave that part of the job until the operation is completed. In an enclosed area, suction device to be used to remove dust while bricklayers grind. The employer and union shall arrange to spell bricklayers at ten minute intervals when they are actually performing grinding work.

H.  On stoves and furnaces, or anywhere else where danger of gas exists, approved gas detecting devices will be required.

I.  On all firebrick or acid proofing jobs, the employer shall furnish all bricklayers with gloves.

J.  All general working conditions which apply to the bricklayer shall also apply to all branches of the trade.

K.  In addition, all other assignments mutually agreed upon between the Employer and the Union on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this Agreement.

L.  In the event of territorial jurisdiction or work assignment dispute with any other BAC Local Union, the matter shall be referred to the International Union for binding resolution.

11

NJ 9997

## ARTICLE IV
## UNION RECOGNITION, UNION SECURITY, ACCESS

A.    The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in the classifications of work falling within the jurisdiction of the Union, as defined in Article III of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

B.    No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employee, provided that the Union has given the employee four (4) days notice that his obligation to make payment has not been met and that his delinquency renders him liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union: (a) if he has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

C.    International Union Representatives and the Business Manager and/or other officers of the Union shall have access to the Employer's jobsites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed, provided however, that such representatives shall not unduly interfere with the job progress.

## ARTICLE V
## HIRING PREFERENCE

The employer agrees that when hiring any employee for any job in the territorial jurisdiction of the agreement he will employ a fair percentage in the territorial jurisdiction of Local No. 4 or Local No. 5 of New Jersey. The employer also agrees that when requesting manpower, they must call the Local Union Office by 4:30 p.m. of the previous day.

12

NJ 9997

## ARTICLE VI
## STEWARDS

A.    The Employer shall hire a steward for each branch of the trade appointed by the business manager of the Union on all jobs. The steward shall be a working employee and shall, when appropriate, be granted reasonable time to conduct union business. The steward shall not be laid off without reasonable cause, without first consulting the business manager.

B.    It is the steward's duty to look after the interest of both parties, see that the number of men desired by the employer is promptly reported to the business agent, take up all grievances on the job, and try to have the same adjusted. In the event that he cannot, he must report that fact to the business agent. He shall conduct himself in a proper manner at all times when on the projects and shall not be discriminated against, discharged, or laid off for the performance of his duties as such. The steward's employment can only be terminated by the employer after a review of complaint against him between the employer and the business agent.

C.    The first Bricklayers & Allied Craftworkers member shall notify the union at the start of each job.

## ARTICLE VII
## APPRENTICES

A.    In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or apprentice improvers is recognized and encouraged by the parties to this Agreement. Apprentices shall be given a minimum of 32 hours per week to perform the work of brick or block provided the work is available. The employer agrees to employ one apprentice for every five journeymen employed on a job site. It is agreed that the Employer shall abide by the National Apprenticeship Standards, developed for masonry craft training, incorporated herein by reference.

B.    All apprentices will be required to attend and successfully complete a pre-job school which shall take place over a period of approximately 12 weeks at a place and at such times as designated by the State Joint Apprenticeship Committee.

C.    After 12 weeks of pre-job training, apprentices shall be required to serve a probationary period of 30 days of employment at the trade during which period no fringe benefit contributions will be required. After satisfactory completion of this period, credit will be given for this time served as part of the three year apprenticeship term. During the probationary period, the termination or cancellation of the apprenticeship agreement may be made by the committee at the request of either party to the agreement. After probationary period, the agreement may be canceled at the request of the apprentice or committee. The committee may cancel the agreement for good cause such as unexcused absences from the job and related training classes if required, lack of progress or interest, and unsafe practices

13

NJ9994

common to the trade.  Due notice shall be given to the apprentice with a reasonable opportunity for corrective action.  Written notice shall be given to the apprentice and Bureau of Apprenticeship and Training of the final action taken.

D.    Apprentices shall be paid not less than the following percentages of the journeyman's basic wage rate.

| | |
|---|---|
| First six months or 500 hours: | 50% of Journeyman's Basic Wage Rate |
| Second six months or 500 hours: | 55% of Journeyman's Basic Wage Rate |
| Third six months or 500 hours: | 65% of Journeyman's Basic Wage Rate |
| Fourth six months or 500 hours: | 75% of Journeyman's Basic Wage Rate |
| Fifth six months or 500 hours: | 85% of Journeyman's Basic Wage Rate |
| Sixth six months or 500 hours: | 95% of Journeyman's Basic Wage Rate |

During the first year of apprenticeship, after the probationary period, fringe benefit contributions shall be required for the Welfare Fund at 50%.  No other fringe benefit contributions shall be required for this period.  Deductions for check off dues and BAC PAC should be made according to Schedule "B" attached hereto.  Commencing with the second year of apprenticeship (third six-months), fringe benefit contributions and check off deductions shall be made according to Schedule "B" attached hereto.

E.    Apprentices may be required to attend related training classes during period of apprenticeship as directed by the Joint Apprenticeship.

## ARTICLE VIII
## FOREMEN

There shall be a separate foreman on all jobs for each branch of the trade.  The employer will determine when the foreman shall not work with tools.  Foreman shall be paid the prevailing regular weekly pay (40 hours), between the initial date of employment and the termination date of employment, holidays and inclement weather days included, provided, however, that all foremen must report to work everyday within the work week unless otherwise directed by the Employer.  All overtime worked by foremen shall be compensated for at proper overtime rates.

## ARTICLE IX
## TRAVELING CONTRACTORS

When the Employer has any work specified in Article III of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area.  Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article X of this Agreement

14

NJ 9997

but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

## ARTICLE X
## WAGES, BACPAC, AND LOCAL DUES CHECKOFF

A.   The hourly wage rates for all employees performing work covered under this Agreement shall be as listed on Schedule "B" attached hereto.

B.   The Union shall have the option of allocating a portion of all of the increases in wage rates for the periods beginning November 1, 1999 and all subsequent increases thereafter, among the various benefit funds specified in Article XI.

C.   The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid. If the employee does not sign a dues check off authorization card, he shall report to the union hall to pay the weekly dues.

D.   The Employer agrees to deduct an amount from the pay of each employee, who is a union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC). Deductions shall be in the amount and at the intervals specified on the check-off authorization form. The Employer agrees to transmit BACPAC deductions to the Treasurer of BACPAC, and shall be accompanied by a list of the names of those employees for whom BACPAC deductions have been made and the amount deducted for each employee.

## ARTICLE XI
## JOINTLY TRUSTEED FUNDS

Section 1.

In addition to the wages and other payments herein provided for, the Employer agrees to pay specified contributions to the following designated funds.

15

NJ 9997.

A.  **Bricklayers and Trowel Trades International Pension Fund**
1.  The contribution to the Bricklayers and Trowel Trades International Pension fund (IPF) shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

B.  **Local Pension Fund**
1.  The contribution to the Local Pension Fund shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the territorial Local Pension Fund which was established under an Agreement and Declaration of Trust.  All Local Pension Funds remitted on behalf of an employee shall be forwarded in whole to the employee's Home Local Pension Fund.  The Home Local Funds shall credit any excess monies remitted for the Pension Fund to the employee's Annuity Fund.

C.  **Local Annuity Fund**
1.  The contribution to the Local Annuity Fund shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the territorial Local Annuity Fund which was established under an Agreement and Declaration of Trust.  All Local Annuity Funds remitted on behalf of an employee shall be forwarded in whole to the employee's Home Local Annuity Fund.  The Home Local Funds shall apply any excess monies remitted for the Annuity Fund to the employee's Pension Fund.

D.  **Bricklayers and Allied Craftworkers Statewide Welfare Fund**
1.  The contribution to the Bricklayers and Allied Craftworkers' Statewide Welfare Fund shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the Bricklayers and Allied Craftworkers' Statewide Welfare Fund which was established under an Agreement and Declaration of Trust, dated May 1, 1988.

E.  **Industry Advancement Fund**
The parties hereto do hereby establish an Industry Advancement Fund pursuant to the requirements of the Labor - Management Relations Act, the Internal Revenue Code and all

16

NJ 9997

applicable laws and the agreement of the parties for the purpose, in all lawful ways, of promoting the increase of commercial, institutional, public and industrial building construction throughout the State of New Jersey and the adjoining areas within the territorial jurisdiction of the unions by providing building owners, architects, engineers, builders, contractors, private and public funding institutions and agencies, government agencies and any others, directly or indirectly, with the building construction industry information, data and other information to communicate the advantages of sound, durable and economical construction that will provide a high degree of service, utilization and benefit to the public by the utilization of union affiliated contractors. The purpose of the Fund shall be to foster and promote the continued utilization and expansion of union construction, particularly utilizing union members of the Bricklayers & Allied Craftworkers union, in prospective projects throughout the State of New Jersey.

In order to carry out this agreement, the parties hereto shall execute such agreements of trust and other documents necessary in accordance with law, which documents shall include the following terms which are agreed to and incorporated into this contract:

1.  The Employer shall make the following contributions for each hour worked by each member of the Bricklayers & Allied Craftworkers union to the Industry Advancement Fund created hereby:

    | Effective November 1, 1999 through December 31, 1999: | $.15 per hour |
    | Effective January 1, 2000 through October 31, 2000: | $.20 per hour |
    | Effective November 1, 2000 through October 31, 2001: | $.25 per hour |

    The parties shall meet to discuss additional increases to the IMI and IAP prior to November 1, 2001. Said increases shall not exceed $.05.

2.  The Bricklayers & Allied Craftworkers' Health & Welfare Fund Office shall collect and distribute such funds.

3.  Effective January 1, 2000, the Building Contractors Association of New Jersey and the Masonry Contractors of New Jersey agree to allocate $.01 of the Industry Advancement Fund contribution to the International Council of Employers of Bricklayers & Allied Craftworkers (I.C.E.) Said contribution shall be forward to I.C.E. by the Masonry Contractors of New Jersey. The remaining contribution shall be divided as follows:

    | BCANJ: | 50% |
    | Masonry Contractors of New Jersey: | 50% |

    In such case as the parties opt to discontinue the $.01 allocation to I.C.E., said $.01 contribution shall be distributed equally between the BCANJ and the Masonry Contractors of New Jersey.

17

NJ9997

4.    The BCANJ and the Masonry Contractors of New Jersey shall utilize said funds in a manner consistent with the terms of the trust including the lease or purchase of materials, supplies and equipment, the lease of premises or purchase of premises, the employment and retention of professional counsel, the engagement of administrative and other employees, and all other appropriate expenses and expenditures which comply with the purposes of the trust and law. However, in all circumstances, it is the intention hereto that the said Fund shall be used to promote the following industry wide activities for the benefit of the contractors utilizing members of the Bricklayers & Allied Craftworkers union including accident prevention, education, research, public relations, industry relations, labor relations, market development, standardization of contracts and specifications and all other such appropriate activities.

5.    Although the Industry Advancement Fund is designated a "contribution" it is expressly understood and agreed that the said sum payable to said Industry Advancement Fund is not intended to be and is not a contribution to employees and no employee of Employer has any proprietary interest in said funds.

6.    The Industry Advancement Fund shall pay the Bricklayers & Allied Craftworkers' Health and Welfare fund 2% of all amounts collected as reimbursement for expenses incurred in connection with the collection services rendered. In addition the Bricklayers & Allied Craftworkers' Health & Welfare Fund shall not be responsible for collection of any delinquent amounts owed by any employer.

F.    **International Masonry Institute (IMI)**
1.    The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/international system.

2.    In order to properly finance IMI programs, the ultimate objective is to provide, through collective bargaining, contributions from the total hourly wage and benefits package, as listed on Schedule "B" attached hereto.

3.    With IMI funding from New Jersey, IMI will be able to provide advertising and promotion, research and development, apprenticeship and training, and labor/management relations programs directed specifically to this area. With these principles in mind, the parties agree to contribute the amounts listed on Schedule "B"

18

NJ 9997

The payments required above shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, 22 July 1970) and/or to the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust, 6 November 1974).

**G.    New Jersey State Apprentice Fund**

1.    The contribution to the New Jersey State Apprentice Fund shall be listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.    The payments required above shall be made to established New Jersey State Fund office which was established under an Agreement and Declaration of Trust.

**Section 2.**
In order to facilitate the establishment of the same wage and fringe benefit structure within Local No. 5, it is agreed that no other funds other than the Welfare, Pension, International Pension, Annuity, Apprentice, IMI, IAP, Labor Management, BAC PAC and Defense Funds shall be contributed to as of November 1, 1999.

**Section 3.**
The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trust, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trust.

**Section 4.**
The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

**Section 5.**
For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

**Section 6.**
Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeymen, apprentices, helpers, trainees and probationary employees.





**BCANJ**
Building Contractors
Association
Of New Jersey

**BULLETIN**

19
Raritan Center - Raritan Plaza II - Fieldcrest Avenue - Edison, NJ 08837
TELEPHONE: 732-225-2265 / FAX: 732-225-3105

NJ9997

**Section 7.**
All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section 1 of this Article. Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audit.

**Section 8.**
If the Employer fails to make any contribution specified in this Article, within twenty (20) days after the date required by the Trustees, the Union shall take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees. In the event a job is stopped due to delinquent fringe benefit payments by the employer, craftworkers shall be compensated a day's wages for each day the delinquency continues, not to exceed five days. The Employer's liability for payment under this article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

**Section 9.**
Management's appointments to the aforementioned Jointly Trusteed Funds are to be made equally by the Building Contractors Association of New Jersey and the Masonry Contractors of New Jersey. The Building Contractors Association of New Jersey and the Masonry Contractors of New Jersey shall only have the right to the appointment of trustees if and when the existing Trust Funds of the predecessor local unions of the International Union of Bricklayers and Allied Craftworkers, Local Unions No. 4 and 5 are merged into statewide benefits funds. Neither the Building Contractors Association of New Jersey or the Masonry Contractors of New Jersey shall have the right or authority to appoint trustees to any trust fund of a predecessor local union unless and until a statewide merger of the Trust Funds occur, except if trustees are currently appointed by either the Building Contractors Association of New Jersey or the Masonry Contractors of New Jersey, that authority shall remain.

**Section 10.**
The Labor/Management Fund established under an Agreement and Declaration of Trust, shall be used to enhance the economic development and competitiveness of the unionized masonry industry, to assure the effective enforcement of prevailing wage laws and to provide for stable labor-management relations. The parties to this agreement shall appoint trustees to this fund in the same manner in which appointments are made to the Statewide Welfare Fund.

**Section 11.**
The parties agree to establish a Committee to explore the concept and funding mechanism for a Market Recovery Program.






NJ9997

## ARTICLE XII
## HOURS WORK, OVERTIME, SHIFTS, AND HOLIDAYS

A.    The standard work day shall consist of eight (8) hours of work with flexible starting and quitting times between the hours of 7:00 a.m. and 4:30 p.m. with a 30-minute unpaid lunch hour occurring in the middle of the shift. The standard work week shall consist of five standard work days commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

B.    All time worked before and after the established eight (8) hour day, Monday through Friday, and all time worked on Saturday shall be paid at the rate of time and one-half. All hours worked on Sundays and holidays shall be paid at the double time rate. If a craftworker works through any portion of their lunch they shall be paid one hour.

If any of the following trades: Carpenters, Laborers, Ironworkers or Operating Engineers Locals, with whom the BCANJ negotiates, receive a more beneficial overtime rate, the Bricklayers will be paid the higher overtime rate.

C.    A make-up day may be worked on Saturday providing it is mutually agreed to by the union and the employer and provided that the following conditions are satisfied:

1.    A make-up day on Saturday can be utilized provided 24 or more hours are worked during the course of the calendar work week, Monday through Friday.

2.    It is not mandatory for an employee to work on a make-up day and it is at their choice and discretion. No negative actions or retribution shall be taken by the employer against any employee who chooses not to work a make-up day.

3.    The sole reason for the loss of hours during the calendar work week must be weather conditions to qualify for a make-up day.

4.    Any time worked before the established starting time or after the established quitting time on a make-up day shall be paid at the applicable overtime rate. Any hours worked on a Saturday make-up day that exceed 40 hours shall be paid at the applicable overtime rate.

5.    If employees are unable to work a make-up day, the local union shall be given the preference to supply the remainder of the employees needed for that day.

6.    There shall be no addition to the previously established crew size for the make-up day.



WASHINGTON, D C
OF AMERICA
ASSOCIATED GENERAL
BUILDING CHAPTER,

Of New Jersey
Association
Building Contractors

Raritan Center - Raritan Plaza Ii - Fieldcrest Avenue - Edison, NJ 08837
TELEPHONE: 732-225-2265 / FAX: 732-225-3105

NJ9997

Any employer who violates the above provisions shall be prohibited from utilizing the make-up day for the duration of this Collective Bargaining Agreement. The employer has the right to file an appeal with the Joint Arbitration Board defined in Article XV of this Collective Bargaining Agreement. Said appeal shall be heard within five (5) days from the date filed. During the appeal process the employer shall be prohibited from utilizing the make-up day provision.

D.    The parties to this Agreement recognize the desirability and in some cases absolute necessity of coordinating the shifts to be worked with the other trades involved on the project and the customer's work schedule. If shift work is necessary and it is mutually agreed to by the union and the employer, the following schedule shall prevail:

When a two shift schedule (including a day shift) is established, the first or day shift shall be established on an eight (8) hour basis. The second shift shall be established on an eight (8) hour basis and paid the base rate plus 15%.

When a three shift schedule is established, and mutually agreed to by the Employer and the Union, the following conditions shall prevail. The day shift shall be established on an eight (8) hour basis, the second shift shall be established on a seven and one-half (7 ½) hour basis, and the third shift shall be established on a seven (7) hour basis. The first shift shall receive the base or regular hourly rate. The second shift shall receive the base hourly rate plus 15%. The third shift shall receive the base hourly rate plus 20%.

When there is no day shift and a second shift or third shift is established and mutually agreed to by the Employer and the Union, the following conditions shall prevail. The second shift shall be established on an eight (8) hour basis. The third shift shall be established on an eight (8) hour basis. The second shift shall receive the base hourly rate plus 15%. The third shift shall receive the base hourly rate plus 20%.

The percentage premium, when added to the base rate, shall be termed the regular hourly rate. Shift hours for the second and third shifts shall be such as to conform to the day shift and in no case shall an employee work on more than one shift within a 24 hour period. When an irregular shift must be established, the percentage premium shall be 15% above the base rate.

All time worked before and after a regularly established shift shall be paid at the applicable overtime rate. When a portion of a regular established shift works into Saturday, Sunday or a Holiday, that time worked shall be paid at the established shift rate.

E.    The Employer agrees to recognize the following holidays: New Year's Day, President's Day, Memorial Day, Fourth of July, Labor Day, Presidential Election Day, Veterans' Day, Thanksgiving Day, and Christmas Day. Holidays falling on a Sunday shall be observed the following Monday. The above holidays are subject to renegotiation based upon agreements established with other trades.



## ARTICLE XIII
## PAYMENT OF WAGES & FRINGE BENEFITS

All employees working under this Agreement shall be paid in cash or by check weekly on Thursday, or another day if mutually agreed between the business agent and the employer, before quitting time and within 72 hours after the closing of the pay for the week. When employees are unable to work on pay day due to inclement weather, the employee shall be paid before 12 noon in absence of reasonable cause for delay. An employee being laid off shall be given his final paycheck in full for all hours of employment one hour before layoff. When working overtime, the one hour notice of layoff does not apply. In the event an employer issues a paycheck and there are insufficient funds in the employer's account, the employer, on the next working day, will bring either cash or cashiers checks to the jobsite to cover the paychecks and all penalties. Failure to do so will result in immediate withdrawal of all craftworkers from the job. Employees will be compensated by the employer for all lost time until the matter is resolved. If a second violation occurs, all payrolls shall be in either the form of cash or cashiers checks. Fringe benefits will be paid on a weekly basis, except that Association Members may pay monthly. Monthly payments shall be due to the fund(s) on or before the fifteenth day of the month immediately following the month during which the contributions were earned. Should an Association Member become delinquent, they may be required by the trustees of the benefits funds to remit weekly payments.

## ARTICLE XIV
## WORKING CONDITIONS

A.    Overhead Protection: If any work is being performed overhead, all Employees must be protected on all outside scaffolds by two inch (2") planks, a covering shall be supplied over all stairwells, hatches, shafts, etc., no more than two (2) stories overhead and two (2) stories below in shafts.

B.    Hard hats are to be supplied by each employer. Failure to wear hard hats is cause for dismissal.

C.    Lines: All contractors must furnish the men with lines. The lines must not be raised more than one (1) course at a time. No bricklayer shall spread mortar before the line has been raised. However, a trig brick can be raised one (1) course before raising the line. Lines on a double unit wall shall be used on both sides of a wall eight inches (8") or over in thickness and on all units of masonry over four (4) feet in length.

D.    Portable Sanitation Units: Suitable portable sanitation units shall be erected on all jobs which shall be kept in sanitary condition. Portable sanitation units shall be built in accordance with State or Municipal health laws.

E.    Cutting Tools: Where employees are employed on cutting masonry, the employer shall have all cutting tools sharpened.

NJ9997

F.  Where machines are used for the cutting of masonry units, a wet saw shall be used. A dry saw may also be used provided that the proper safety protection is furnished. It is agreed that in order to protect the health and safety of employees the dry cutting of masonry units by means of hand-held, gas powered or electrical, portable "chop saws" and skill saws, and the dry grinding of masonry materials shall be done in a designated area away from craftworkers if at all possible. It is the responsibility of the employee to adhere to the established restrictions for said designated areas. Dry cutting shall be permissible provided applicable water attachments are used. In all cases, employees shall be provided with proper respirators as part of a complete respiratory protection program which shall include proper selection, fit testing and air monitoring, and eye protection in accordance with OSHA standards. It is the employee's responsibility to utilize proper protection. The employee operating the machine shall be allowed ten (10) minutes to clean up at 12:00 noon and quitting time.

G.  Cutting and Mechanical Devices: Where air guns or other mechanical devices are used for the purpose of cutting chases, opening, etc., in brick work, such gun or device shall not exceed fifteen (15) lbs. weight. When such device exceeds fifteen (15) lbs., the employer may use a laborer to assist the bricklayer in handling the gun, but there shall always be one bricklayer on each gun in use. All cutting, when done by hammer and chisel, shall be done exclusively by the bricklayer. Where a bull and sledge hammer is used, there shall be a composite crew of bricklayers and laborers. (The bricklayer foreman shall have complete authority over all men employed in this phase of work.) All cutting out of brick work, pointing, washing down, caulking cement and lime waterproofing washing of brick, or slabs, used in floor arches shall be done by bricklayers, and where scaffolding is used in the above work wire rope shall be used.

H.  Pointing: All pointing and joining of brick work shall be done by journeymen who built same, if possible.

I.  Cement Block: Bricklayers and stone masons to set all cement blocks and all masonry units.

J.  Cork Block: All cork block (Styrofoam Sheets), and substitutes thereof, shall be laid by bricklayers.

K.  Caulking: All pointing and caulking of windows with cement or composition to be done by bricklayers, by either gun, trowel or any other method.

L.  Stone Work: All renovation, cleaning, and pointing of stone to be done by this union.

M.  The setting, aligning and erection of all precast slabs and the setting and leveling of all bearing plates for structural steel or machinery shall be done by the members of the above local union.

N.  Composite crew on all precast panels. Setting of all other masonry panels shall be the work of BAC Members.

ASSOCIATED GENERAL
CONTRACTORS
OF AMERICA

Building Contractors
Association
Of New Jersey
TELEPHONE: 732-225-2265 / FAX: 732-225-3105
Raritan Center - Raritan Plaza II - Fieldcrest Avenue - Edison, NJ 08837

BCANJ

BULLETIN

NJ9997

O.   All brick or block panels shall be erected by union bricklayers.

P.   Waterproofing: All transparent waterproofing applied to brick or stone work with brush or spray to be done by bricklayers.

Q.   There are to be two men on all blocks weighing 40 lbs. or more.

R.   Scaffolding: No block 6" or over in size shall be built more than six (6) courses in scaffold height. Where blocks of 100 lbs. or over are used, a pony scaffold is to be erected when the wall is three (3) feet high, for the easier laying of these blocks to the next scaffold height.

S.   Water: Water containers and sanitary drinking cups shall be provided on all jobs to be furnished by all contractors at all times.

T.   Shanty and Stoves: Where there are not more than ten (10) men employed on a job, a shanty house shall be erected exclusively for the bricklayer, and it shall contain not less than eighty (80) square feet of floor space. Where there are more than ten (10) men and not more than twenty (20) men, the shanty house shall contain not less than one hundred and fifty (150) square feet of floor space. Where there are more than twenty (20) men and not more than thirty (30) men it shall contain not less than two hundred (200) square feet of floor space but where there are more than thirty (30) men employed the same proportion shall apply. Where there is a shanty and no elevator located in the building it shall not be above the ground floor unless elevator is provided except on alterations where it will be placed to suit the convenience of the contractor.

U.   Ample provision shall be made to protect all bricklayers levels on all outside scaffolds.

V.   It shall be deemed unsafe to run any brick work up more than 6 courses or 16" whichever is less without backing up in cavity walls or any masonry walls which does not utilize a brick header course.

W.   Contractors shall provide a two foot clear, planked working area beyond the building wall when bricklayers or stone masons are working off new footing on or below grade.

X.   There shall be a clothing allowance of fifty cents (.50) per hour minimum on all fire brick work paid by contractor.

Y.   There will be one coffee break in the morning not to exceed ten (10) minutes. There shall be an afternoon coffee break not to exceed five (5) minutes at the place of work.

Z.   All mortar tubs will be raised to at least sixteen inches, not to exceed thirty inches.

AA.  All rubber gloves and goggles to be furnished by the contractor for all washing down.




NJ9997

**BB.** All work on high stacks, the contractor will pay a premium wage of 22% above the wage scale.

**CC.** All scaffolds will be kept at least four (4) inches below the wall.

**DD.** If an employee works past the full hour and must stop because of inclement weather conditions, he shall be paid for the full hour, but is not to leave the job until expiration of said hour. No employee shall start work on the half hour.

**EE.** If an employee reports to work and is not started but requested to stay on the job by the contractor, the employee shall be paid for all time prior to starting or until informed that no work shall be performed.

**FF.** In the event that due to failure or breakdown of machinery or equipment a work stoppage occurs between starting time and 12 noon, men shall be paid until noon. Employees must, however, remain on the job until noon. In the event that due to failure or breakdown of machinery or equipment a work stoppage occurs between 12:30 p.m. and 3:30 or 4:30 p.m., employees shall be paid until 3:30 or 4:30 p.m. Employees must remain on the job until 3:30 or 4:30 p.m.

**GG.** When a job does not start at the regular starting time, it will be the duty of the Foreman to notify the Shop Steward, personally, two hours after the designated start regarding the work conditions. It is clearly understood and agreed the employer will not send anyone to work on a job working during inclement weather unless all of the men regularly employed on that job who showed up for work at starting time are started first. Nothing herein contained shall be construed to deny the saw men, lay-out men and steward regularly employed on the job from working at anytime at their respective job assignments if they are needed.

**ARTICLE XV**
**GRIEVANCE PROCEDURE**

**A.** The parties to this Agreement shall establish a Joint Arbitration Board consisting of two representatives of the Building Contractors Association of New Jersey, two representatives of the Mason Contractors of New Jersey and four representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. The boards shall meet at least once a month, or on call, to settle complaints, abuses or grievances. It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendments shall submit same in writing to the Board. The Employer and union representatives at a session shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

**B.** It is specifically agreed that any controversy arising out of this Agreement involving the



N J 9 9 9 7

interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the union or to the attention of the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

C.    Grievances shall be handled in the following manner:

1.    The grievance shall be referred to the jobsite union steward and to an employer representative for adjustment.

2.    If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the Business Manager of the Union and the Employer.

3.    If the grievance cannot be settled pursuant to paragraph 2 of this Section within three (3) working days excluding weekends and holidays, the grievance shall be submitted within 48 hours to the Joint Arbitration Board for consideration and settlement.

4.    If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working day, not including weekends and holidays, following a referral of the grievance to the Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Arbitration Board cannot agree on an impartial arbitrator, then the matter shall be submitted to the American Arbitration Association for a decision. All expenses of the Impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

D.    When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provided, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section C of this Article, the parties agree that such settlements shall not be precedent-setting.

E.    The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure. However, failure to process a grievance , or failure to respond within the time limits provided above, without a written request for an extension of time, shall be deemed a waiver of such grievance without prejudice and shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

## JURISDICTIONAL DISPUTES

A.    In order to avoid jurisdictional disputes which have such a demoralizing effect upon the



27

TELEPHONE: 732-225-2265 / FAX: 732-225-3105
Raritan Center - Raritan Plaza II - Fieldcrest Avenue - Edison, NJ 08837

NJ9997

progress of the construction work, it is agreed that only B.A.C. Members will be employed on work which is recognized as coming under the jurisdiction of the International Union of Bricklayers and Allied Craftworkers as:

1.  Granted by the A.F.L. - C.I.O.

2.  Determined by a Joint Board consisting of four representatives from the Local Unions, two representatives from the Building Contractors Association of New Jersey and two representatives from the Mason Contractors of New Jersey.

3.  As established by practice of Employers within the area designated herein whenever (1) or (2) above are not applicable;

4.  It is the intent of the parties that wherever a job decision shall be deemed to be strongly indicative of the area practice, the Bricklayers & Allied Craftworkers Local Unions will advise all personnel affected to make future assignments accordingly.

5.  It is further the intent of the parties hereto that wherever possible, and whenever the contractor can reasonably foresee a jurisdictional dispute, the contractor will call a pre-job conference with the Local concerned and the contractors agree that when no agreement is reached, at the request of the Union, the contractor will join in the submission of the matter to the Joint Board. In the meantime, the work shall proceed by the craft in possession of the work.

B.  The Employer and the Unions agree to be governed by the terms and conditions of the Agreement, effective May 1, 1995, as amended, creating the Joint Board for the settlement of any jurisdictional dispute; and the decisions of the Joint Board will be followed in good faith.

## ARTICLE XVI
## SUBCONTRACTING

A.  The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

B.  All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

BUILDING CHAPTER,
ASSOCIATED GENERAL
CONTRACTORS
OF AMERICA,
WASHINGTON, D.C.



**Of New Jersey**
Association
Building Contractors



28

Raritan Center - Raritan Plaza II - Fieldcrest Avenue - Edison, NJ 08837
TELEPHONE: 732-225-2265 / FAX: 732-225-3105



NJ 9997

## ARTICLE XVII
## PRESERVATION OF WORK (Anti-Double Breasting)

A.  In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

B.  All charges of violations of Section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XV of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XV is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

C.  If, as a result of violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section B above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XVIII
## NO-STRIKE/NO-LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XIV have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fide collective bargaining.





29

NJ9997

## ARTICLE XIX
## SEPARABILITY AND SAVINGS PROVISION

It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect.

In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

## ARTICLE XX
## MORE FAVORABLE CONDITIONS

The Union hereby agrees that if it affords any conditions of a more favorable means to any other employer with whom it has a collective bargaining agreement who performs the same or similar work, that said more favorable condition shall automatically be incorporated in this Agreement and be afforded all members of the Association covered hereunder.

## ARTICLE XXI
## GENERAL UNDERSTANDING

The Union agrees to cooperate with the Employer in meeting conditions peculiar to the job in which it may be engaged. It will at all times meet and confer with the Employer, and similarly, the Employer will at all times meet with the Union respecting any questions or misunderstandings that may arise under the performance of this Agreement.

This Agreement constitutes the entire agreement between the parties, and any local or area practices or working rules which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement.

The Employer agrees that if it has not previously done so, it will, upon the Union's submission of evidence of majority status among its employees in the bargaining unit described herein, voluntarily recognize the Union as the exclusive representative as defined in Section 9(a) of the National Labor Relations Act, as amended, of all employees within that bargaining unit on all present and future jobsites within the jurisdiction of the Union. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

**BULLETIN**

TELEPHONE: 732-225-2265 / FAX: 732-225-3105
Raritan Center - Raritan Plaza II - Fieldcrest Avenue - Edison, NJ 08837

**BCNJ**
Building Contractors
Association
Of New Jersey



NJ 9997

**IN WITNESS WHEREOF,** we the authorized officers of the Building Contractors Association of New Jersey, the Masonry Contractors of New Jersey and the Bricklayers & Allied Craftworkers, Local Unions No. 4 & 5 have hereunto set our hands and seals this 31st day of October, 1999.

*Authorized Management Representatives*

Joseph Natoli, BCANJ

Robert Epifano, BCANJ

Ralph Pastore, BCANJ

Jack Macedo, BCANJ

Jack Kotsis, BCANJ

Joseph Speranza, MC of NJ

Michael Schmerbeck, MC of NJ

Michael Peterson, BCA/AC

*Authorized Union Representatives*

Gerald Della Salla, Local No. 4

John Capo, Local No. 4

Daniel Guerrera, Local No. 4

Sal Renna, Local No. 4

Joseph DiRenzo, Local No. 5

Gerard Scarano, Local No. 5

Michael Perrone, Local No. 5

Richard Tolson, Local No. 5

31

03/24/2008  10:43    6092918228                    IMI                    PAGE 02/02
FEB-02-00 03:45P BAC Local 5 NJ                            16093241505                    P.02

000017

*The undersigned employer agrees to be bound by all terms of the within agreement:*

Dooley, Knatchbur Inc.
**Name of Firm**

500 Elm Ave
**Physical street address**

Bensalem                              Pa        19020
**City**                              **State**    **Zip Code**

215-245-5478                215-245-2172
**Phone Number**                      **Fax Number**

2-3-00
**Date**

23-2645563
**Employers Federal Identification Number**

232-645-563/000
**New Jersey Employment Compensation Identification Number**

Managed Comp.
**Workmen's Compensation Insurance Carrier**

**\*\*\*\*\*\*\*\*\*\*\*Signatures of Parties\*\*\*\*\*\*\*\*\*\*\***

_____    Joseph P Dooley       2-3-00
**Member of Firm Signature**   **Printed Name**        **Date**
                                              PRESIDENT

_____    Michael P Perrone.    Field Representative
**Member of Union Signature**  **Printed Name**        **Date**

**_PLEASE REMIT THIS SIGNATURE PAGE TO:_**

*Bricklayers & Allied Craftworkers Local No 5*
*3281 Route 206, Suite 3*
*Bordentown, New Jersey 08505*

*Office No – (609)324-0500*
*Fax No – (609)324-1505*


#6
Area

**NJ  0297**

# MEMORANDUM OF UNDERSTANDING

It is hereby agreed by and between the Building Contractors Association of New Jersey, Masonry Contractors of New Jersey and all affiliated local associations and the International Union of Bricklayers and Allied Craftworkers Locals No. 4, 5 & 2 that the local union's collective bargaining agreement between said parties, which expires on October 31, 2002, shall hereby continue in full force and effect except as modified herein:

## I.    Terms of Agreement

A.    There shall be a total wage/fringe package increase of:

-$2.00 effective November 1, 2002;
$2.00 effective November 1, 2003;
$2.00 effective November 1, 2004;
$2.00 effective November 1, 2005;
$2.00 effective effective November 1, 2006.

B.    In addition, there shall be a $.03 per hour increase to the IAP effective November 1, 2002. There will be no further increases to the IAP for the duration of this contract unless mutually agreed to by the parties.

C.    The parties agree that there shall be parity in the total wage/fringe package between Locals No. 4, 5 & 2, to be accomplished during the duration of this agreement. Therefore, in addition to the increases established in Paragraph A, the following additional increases shall be effective as follows:

For Local No. 5 & 2 the following **additional** total wage/fringe increases shall apply:

| | |
|---|---|
| Effective November 1, 2003 - | $.30 per hour |
| Effective November 1, 2004 - | $.30 per hour |
| Effective November 1, 2005 - | $.30 per hour |
| Effective November 1, 2006 - | $.32 per hour |

For Local No. 2 (covering the Camden, Salem and Gloucester counties area) the following **additional** total wage/fringe increase shall apply:

| | |
|---|---|
| Effective November 1, 2002 - | $.50 per hour |
| Effective November 1, 2003 - | $.50 per hour |
| Effective November 1, 2004 - | $.50 per hour |
| Effective November 1, 2005 - | $.50 per hour |
| Effective November 1, 2006 - | $.50 per hour |

*08 0858*

D.    The Agreement shall expire on October 31, 2007.

Page 1 of 6



RECEIVED
NOV 1 3 2002
COLLECTIVE BARGAINING SERVICES

FILED
MAY 1 9 2008
Clerk, U.S. District and
Bankruptcy Courts

This is a copy printed from the IUBAC's Double S Management System.

Memorandum of Understanding
Bricklayers & Allied Craftworkers, Local Unions No. 4, 5 & 2



II.    The Agreement shall be modified, by mutual agreement, so that language that is incorrectly placed is moved to appropriate articles and sections including, but not limited to, the following:

    A.    Article III: Cement Masons/Paragraphs K and M shall be moved to Article XIV/Working Conditions.

III.    **Article III: Scope of Work**
Scope of work shall be amended to reflect the following:

    A.    Bricklayers, Cement Masons, Plasterers, Pointer Caulkers, Cleaners, Fire Proofers, Stone Masons, Brick Pavers and Exterior Marble Masons shall be the trade jurisdiction for Bergen, Essex, Hudson, Morris, Passaic, Sussex, Union, Warren, part of Hunterdon, Middlesex and Somerset counties, as indicated on the jurisdictional map maintained by the International Union.

    B.    Bricklayers, Pointer Caulkers, Cleaners, Stone Masons, Brick Pavers and Exterior Marble Masons shall be the trade jurisdiction for, Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Mercer, Monmouth, Ocean, Salem, and parts of Hunterdon, Middlesex and Somerset counties, as indicated on the jurisdictional map maintained by the International Union.

    C.    The trade and territorial jurisdiction for Local No. 2 shall cover new construction, maintenance, repair and renovation in the New Jersey counties of Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Mercer, Monmouth, Ocean, Salem, and parts of Hunterdon, Middlesex and Somerset for all work falling within the jurisdiction of the Union, as defined in Branches of the Trades for Cement Masons, Plasterers & Fire Proofers, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers.

    D.    Autoclaved Aerated Concrete Masonry Units (AACMU)
The Bricklayer shall perform the complete installation and related finish work of all AACMU. These operations include, but are not limited to; the cutting, fitting and applications of mortar and/or other cementious materials used for the setting and bonding purposes as well as the actual laying of the AACMU block units into position. The routing, drilling, cutting and patching for all mechanical piping and openings. The preparation, assembly, unloading, selecting or staging of AACMU panels, hooking on, signaling, drilling, cutting, installation of support angles or strut supports, fitting, bedding, landing, setting, leveling, plumbing, aligning, fastening, anchoring (whether by bolt, clip, pin, or weld), insulation, caulking, grouting, patching, cleaning, waterproofing and installation of all AACMU units. This also includes all work operations related to the installation and applications of all coating,



This is a copy printed from the IUBAC Document Management System.

☞NJ 0297

covering and veneer systems (both exterior and interior) on all AACMU units. These work operations include, but are not limited to: preparations of walls, the mixing and applications of any and all finish coating materials by any method (i.e. trowel on, machine, spray on, etc.) or any other device deemed necessary to produce the desired finish surface.

E.    Cement Masons Agreement (Paragraph N)
Employees who have been employed on a job more than three (3) days who are discharged or laid off shall be notified and paid off one hour before such discharge or layoff. If not complied with, another hour shall be paid. The one hour notice of layoff does not apply when overtime is worked.

## IV.    Article IV: Union Recognition, Union Security, Access

This article shall be amended to include the following language:
"It is recognized and agreed by the parties to this Collective Bargaining Agreement that the Local Union is the authorized collective bargaining agent for all its members in connection with issues related to the wages, working conditions, employee fringe benefit funds and reciprocity."

## V.    Article XI: Jointly Trusteed Funds

Add...
"In the event any of the trust funds to which contributions are required to be made, under this Agreement, is merged with or into another trust fund, the contributions shall be made to the successor fund."

"For Local No. 2, the Apprentice Fund contribution of $.15 shall be suspended and replaced with a $.15 contribution to a Defense Fund to be established by the Union."

Amend Section 2 as follows:
"During the term of this agreement, the parties agree to establish uniform wages and fringe benefits for Local No. 4 & 5."

## VI.    Article XII: Hours of Work

Amend Paragraph A as follows:
"Work Hours shall be modified so that the standard work day shall consist of eight hours of work with starting and quitting times of either 7:00 a.m. to 3:30 p.m., or 8:00 a.m. to 4:30 p.m., unless otherwise mutually agreed to by the parties."



RECEIVED
NOV 1 3 2002
COLLECTIVE BARGAINING SERVICES

This is a copy printed from the IUBAC Document Management System.

Memorandum of Understanding
Bricklayers & Allied Craftworkers, Local Unions No. 4, 5 & 2                    ⌐NJ   0297

**VII.   Article XIII: Payment of Wages & Fringe Benefits**

Amend article to include the following:

"An employee who has worked more than three days who is being laid off shall be given his final paycheck in full for all hours of employment one hour before layoff."

Add...

"When payment by check is permitted, the union may require that provisions be made to cash checks locally for out of state contractors. The Employees shall be paid prior to the end of the established weekly pay day, at the jobsite, or an earlier day if the regular pay day falls on a recognized holiday when the banks are closed."

**VIII.   Article XIV: Working Conditions**

Paragraph (F) shall be amended as follows:

"In order to protect the health and safety of employees against the effects of silicosis and other respiratory diseases, the dry cutting of masonry units by the means of hand-held, gas-powered, or electrical, portable "chop saws" and skill saws, and the dry grinding of masonry materials shall be prohibited on all masonry projects. The only exception to this provision will be when the Union and employer determine that the use of water is not feasible. When the Union and employer identify such tasks, the employer must ensure that the engineering and work practice controls are in place to control the dust: such as a vacuum, with high efficiency particulate air (HEPA) filter or another dust control system. It is agreed that in order to protect the health and safety of employees the dry cutting of masonry units by means of hand-held, gas powered or electrical, portable "chop saws" and skill saws, and the dry grinding of masonry materials shall be done in a designated area away from craftworkers if at all possible. It is the responsibility of the employee to adhere to the established restrictions for said designated areas

Respirators should only be used as the primary method of protection if other engineering and work practice controls are not feasible. When the respirators are used, in accordance with the OSHA regulations, employers must provide workers with full-face respirators as part of a complete respiratory program that includes the proper selection of respiratory cartridges, and training and fit-testing to ensure that the worker is able to wear a respirator. It is the employee's responsibility to utilize proper protection.

Additionally, in the event the Union and the employer determine that dry-cutting or grinding is necessary, the contractor agrees to perform periodic air monitoring to ensure that the silica exposure levels do not exceed OSHA permissible exposure limit. Failure to comply will result in work stoppage. The employee operating the machine shall be allowed ten (10) minutes to clean up at 12:00 noon and quitting time.

Page 4 of  6

Memorandum of Understanding
Bricklayers & Allied Craftworkers, Local Unions No. 4, 5 & 2    ⊽NJ 0297

Employees engaged in wet cutting masonry products will be furnished elbow length gloves, an apron and goggles. No employee shall operate a wet saw unless provided with a wooden platform on which to stand and the saw is properly grounded."

Paragraph (R) shall include the following:
"When a BAC member works on a swing scaffold as part of a composite crew, they shall receive the same premium differential as the other trades performing work on the same swing scaffold.

Paragraph (Y) shall be changed to:
Delete...       The afternoon coffee break.
Add...          The employee shall be allowed five (5) minutes to clean up prior to quitting time.

IX.    **Article XXI: General Understanding**
This article shall be amended to include the following:
Add...

"Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a), representative of the employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents the majority of the bargaining unit Employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future job sites within that jurisdiction of the Union.

The employer agrees that if it has not previously done so, at any time during this agreement it will, upon the Union's request for recognition as the Section 9(a) representative of the employees in the bargaining unit described herein, and upon the union's submission of proof of majority support by such employees, voluntarily recognize the union as the exclusive representative as defined in Section 9 (a) of the National Labor Relations Act, of all the employees within the bargaining unit on all present and future jobsites within the jurisdiction of the Union. When the Union has requested recognition as majority representative, the employers recognition will be based on the union's proof or offer to submit proof. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board."

Delete...
Third Paragraph

Page 5 of 6

Memorandum of Understanding
Bricklayers & Allied Craftworkers, Local Unions No. 4, 5 & 2

NJ   0297

**IN WITNESS WHEREOF,** we the authorized officers of the Building Contractors Association of New Jersey, the Masonry Contractors of New Jersey and the Bricklayers & Allied Craftworkers, Local Unions No. 4 , 5 & 2  have hereunto set our hands and seals this      day of October, 2002.

*Authorized Management Representatives*

_____
Joseph Natoli, BCANJ

_____
Jack Kocsis, Jr., BCANJ

_____
Michael Schmerbeck, MC of NJ

_____
Michael Peterson, BCA/AC

*Authorized Union Representatives*

_____
Gerald Della Salla, Local No. 4

_____
Michael Perrone, Local No. 5

_____
Thomas F. Rhoades, Local No.2

Page 6 of 6

This is a copy printed from the IUBAC Document Management System.

# NEW JERSEY B.A.C. LOCAL #4 - NORTH JERSEY
WAGE RATE AND FRINGE PACKAGE AS OF  NOVEMBER 1, 2002

## WAGES

| | |
|---|---|
| JOURNEYMAN | $31.22/HOUR |
| FOREMAN | 36.91/HOUR |
| DEPUTY FOREMAN | 35.91/HOUR |

All time worked before or after the established 8 hour day Monday-Friday and on Saturday shall be paid at Time & One Half.
Any time worked thru Lunch shall be paid One (1) hour.
All hours worked on Sundays & Holidays shall be paid at Double time rate

### FRINGE BENEFIT PACKAGE

NOTE: CHECKS FOR THESE BENEFITS PAYABLE
To: B.A.C. LOCAL #4 BENEFIT FUNDS
$14.86 X HOURS PAID

| | |
|---|---|
| HEALTH FUND | $ 5.00 |
| LOCAL PENSION FUND | 3.30 |
| INT'L PENSION FUND | 1.50 |
| ANNUITY FUND | 3.75 |
| N.J. APPRENTICE FUND | .15 |
| INDUSTRY ADVANCEMENT FUND | .33 |
| INT'L MASONRY INSTITUTE | .70 |
| LABOR MANAGEMENT FUND | .05 |
| **TOTAL FRINGE** | $14.78 |

### DEDUCTIBLE ITEMS TO BE INCLUDED IN BENEFIT PAYMENT

| | |
|---|---|
| I.U. PAC | $ .01 |
| LOCAL #4 PAC | .07 |
| **TOTAL DEDUCTIBLE ITEMS** | $ .08 |

LOCAL #4 DUES CHECK OFF IS TO BE DEDUCTED FROM WAGES AFTER TAXES AND PAID WITH A SEPARATE CHECK PAYABLE TO B.A.C. LOCAL #4 N.J.

| | | |
|---|---|---|
| JOURNEYMAN | $1.94 | PER HOUR PAID |
| FOREMAN | $2.16 | PER HOUR PAID |
| DEPUTY | $2.12 | PER HOUR PAID |

**IMPORTANT:** BOTH FRINGE AND CHECK-OFF PAYMENTS ARE TO BE SENT
TO:  N.J. B.A.C. LOCAL #4 BENEFIT FUNDS
143 WASHINGTON STREET
MORRISTOWN, N.J. 07960



RECEIVED
NOV 1 3 2002
COLLECTIVE BARGAINING SERVICES

# NEW JERSEY B.A.C. LOCAL #4 - NORTH JERSEY
## APPRENTICE WAGE AND FRINGE PACKAGE AS OF NOVEMBER 1, 2002

|  | 50% | 55% | 65% | 75% | 85% | 95% |
|---|---|---|---|---|---|---|
| W A G E S | 15.61 | 17.17 | 20.29 | 23.41 | 26.53 | 29.65 |
| HEALTH FUND | 2.50 | 2.75 | 3.25 | 3.75 | 4.25 | 4.75 |
| LOCAL PENSION FUND | 0 | 0 | 2.14 | 2.47 | 2.80 | 3.13 |
| I.U. PENSION FUND | 0 | 0 | .98 | 1.13 | 1.28 | 1.43 |
| ANNUITY FUND | 0 | 0 | 2.44 | 2.81 | 3.19 | 3.56 |
| NJ APPRENTICE FUND | 0 | 0 | .15 | .15 | .15 | .15 |
| I A P | 0 | 0 | .33 | .33 | .33 | .33 |
| I M I | 0 | 0 | .70 | .70 | .70 | .70 |
| LABOR MGT FUND | 0 | 0 | .05 | .05 | .05 | .05 |
| IN'L BAC PAC FUND *DEDUCTION* | .01 | .01 | .01 | .01 | .01 | .01 |
| BAC PAC *DEDUCTION* | .07 | .07 | .07 | .07 | .07 | .07 |
| T O T A L  F R I N G E | 2.58 | 2.83 | 10.12 | 11.47 | 12.88 | 14.18 |
| DUES-CHECK OFF *DEDUCTION* | .82 | .89 | 1.31 | 1.49 | 1.67 | 1.85 |

PNJ 0297

RECEIVED NOV 13 2002 COLLECTIVE BARGAINING SERVICES

This is a copy printed from the IUBAC Document Management System.

# NEW JERSEY B.A.C. LOCAL #4 - NORTH JERSEY
### WAGE RATE AND FRINGE PACKAGE AS OF  JANUARY 1, 2003

## WAGES



**NJ 0297**

*Ap. 12/6/02*

| | |
|---|---|
| JOURNEYMAN | $30.37/HOUR |
| FOREMAN | 36.06/HOUR |
| DEPUTY FOREMAN | 35.06/HOUR |

All time worked before or after the established 8 hour day Monday-Friday and on Saturday shall be paid at Time & One Half.
Any time worked thru Lunch shall be paid One (1) hour.
All hours worked on Sundays & Holidays shall be paid at Double time rate

---

**FRINGE BENEFIT PACKAGE**

NOTE: CHECKS FOR THESE BENEFITS PAYABLE
To: **B.A.C. LOCAL #4 BENEFIT FUNDS**
**$15.75 X HOURS PAID**

| | |
|---|---|
| HEALTH FUND | $ 5.25 |
| LOCAL PENSION FUND | 3.65 |
| INT'L PENSION FUND | 1.50 |
| ANNUITY FUND | 4.00 |
| N.J. APPRENTICE FUND | .15 |
| INDUSTRY ADVANCEMENT FUND | .33 |
| INT'L MASONRY INSTITUTE | .70 |
| LABOR MANAGEMENT FUND | .05 |
| **TOTAL FRINGE** | **$15.63** |

**DEDUCTIBLE ITEMS TO BE INCLUDED IN BENEFIT PAYMENT**

| | |
|---|---|
| I.U. PAC | $ .02 |
| LOCAL #4 PAC | .10 |
| **TOTAL DEDUCTIBLE ITEMS** | **$ .12** |

---

LOCAL #4 DUES CHECK OFF IS TO BE DEDUCTED FROM WAGES **AFTER TAXES** AND PAID WITH A SEPARATE
CHECK PAYABLE TO **B.A.C. LOCAL #4 N.J.**

| | |
|---|---|
| JOURNEYMAN | $1.94  PER HOUR PAID |
| FOREMAN | $2.16  PER HOUR PAID |
| DEPUTY | $2.12  PER HOUR PAID |

**RECEIVED**

**DEC - 6 2002**

**COLLECTIVE BARGAINING SERVICES**

---

**IMPORTANT: BOTH FRINGE AND CHECK-OFF PAYMENTS ARE TO BE SENT
TO:**  N.J. B.A.C. LOCAL #4 BENEFIT FUNDS
143 WASHINGTON STREET
MORRISTOWN, N.J. 07960

This is a copy printed from the IUBAC Document Management System.

BNJ 0297

# AGREEMENT BETWEEN

## BUILDING CONTRACTORS ASSOCIATION OF NEW JERSEY

## OTHER SIGNATORY EMPLOYERS

-and-

## LOCAL UNION NOS. 4, 5 & 2
### OF THE
### INTERNATIONAL UNION OF
### BRICKLAYERS AND ALLIED CRAFTWORKERS

08 0858

*November 1, 2002 through October 31, 2007*



R E C E I V E D

NOV 2 6 2002

COLLECTIVE BARGAINING SERVICES

**FILED**

MAY 1 9 2008

Clerk, U.S. District and
Bankruptcy Courts

This is a copy printed from the IUBAC Document Management System.

# Table of Contents  IJNJ 0297

|  | ARTICLE NO. | PAGE NO. |
|---|---|---|
| Apprentices | VII | 14 |
| Duration/Termination/Amendment | II | 1 |
| Foremen | VIII | 15 |
| General Understanding | XXI | 32 |
| Grievance Procedure | XV | 28 |
| Hiring Preference | V | 13 |
| Hours Work, Overtime, Shifts, Holidays | XII | 21 |
| Jointly Trusteed Funds | XI | 16 |
| More Favorable Conditions | XX | 32 |
| No-Strike/No-Lockout | XVIII | 31 |
| Parties | I | 1 |
| Payment of Wages & Fringe Benefits | XIII | 23 |
| Preservation of Work | XVII | 30 |
| Scope of Work | III | 1 |
| Separability and Savings Provision | XIX | 31 |
| Stewards | VI | 13 |
| Subcontracting | XVI | 30 |
| Traveling Contractors | IX | 15 |
| Union Recognition, Union Security Access | IV | 12 |
| Wages, BACPAC, and Local Dues Checkoff | X | 16 |
| Working Conditions | XIV | 24 |

ᴰNJ 0297

**AGREEMENT BETWEEN**
**BUILDING CONTRACTORS ASSOCIATION OF NEW JERSEY**
**OTHER SIGNATORY EMPLOYERS**
**-and-**
**LOCAL UNION NOS. 4, 5 & 2**
**OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED**
**CRAFTWORKERS**

## ARTICLE I
## PARTIES

This Agreement is entered into this *first day of November 2002,* by and between the Building Contractors Association of New Jersey, (hereinafter referred to as the Association), for and on behalf of its members as set forth in Schedule "A" attached hereto and other contractors who are signatory hereto or who may become signatory hereto (hereinafter referred to as the Employer), and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NOS. 4, 5 & 2 (hereinafter referred to as the Union).

The Association agrees to furnish to the Union a list of all members of the Association denoting those members bound to the terms of this Agreement, the honorary members, independent members, and any other classes or groups of members.

## ARTICLE II
## DURATION - TERMINATION - AMENDMENT

This Agreement shall be effective commencing *November 1st, 2002* and shall continue in full force and effect up to and including *October 31, 2007,* and shall be automatically continued for each successive period of this Collective Bargaining Agreement unless written notice of decision to negotiate a new Agreement in whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter. If the parties fail to reach an agreement in such negotiations, the issues in dispute shall be submitted to the International Masonry Institute's Dispute Settlement Plan for such steps as are deemed appropriate in accordance with the procedures of the Plan. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not affect the continuing nature of this Agreement.

## ARTICLE III
## SCOPE OF WORK

A.    This Agreement shall cover new construction, maintenance, repair and renovation in the State of New Jersey.

1

This is a copy printed from the IUBAC Document Management System.



B.  The Employers bound hereby recognize the Union's claim to all  work falling within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference.

C.  The installation of Brick and all other masonry units such as blocks, etc., with or without mortar, anywhere on the project shall be the work of Bricklayers & Allied Craftworkers of International Union, Local Nos. 4 & 5.

D.  Temporary heat, applicable to all branches of the trade, to protect any Masonry work performed and shall include all masonry materials all year, especially in the winter months (November 15th through March 15th).

E.  The trade and territorial jurisdiction for Local No. 4 shall cover new construction, maintenance, repair and renovation for the following trades and counties:
    Bricklayers, Cement Masons, Plasterers, Pointer Caulkers, Cleaners, Fire Proofers, Stone Masons, Brick Pavers and Exterior Marble Masons shall be the trade jurisdiction for Bergen, Essex, Hudson, Morris, Passaic, Sussex, Union, Warren, part of Hunterdon, Middlesex and Somerset counties, as indicated on the jurisdictional map maintained by the International Union.

F.  The trade and territorial jurisdiction for Local No. 5 shall cover new construction, maintenance, repair and renovation for the following trades and counties:
    Bricklayers, Pointer Caulkers, Cleaners, Stone Masons, Brick Pavers and Exterior Marble Masons shall be the trade jurisdiction for, Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Mercer, Monmouth, Ocean, Salem, and parts of Hunterdon, Middlesex and Somerset counties, as indicated on the jurisdictional map maintained by the International Union.

G.  The trade and territorial jurisdiction for Local No. 2 shall cover new construction, maintenance, repair and renovation in the following trades and counties:
    Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Mercer, Monmouth, Ocean, Salem, and parts of Hunterdon, Middlesex and Somerset for all work falling within the jurisdiction of the Union, as defined in Branches of the Trades for Cement Masons, Plasterers & Fire Proofers, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers.

## Brick Masonry

A.  Bricklaying masonry shall consist of, but not limited to, the following work procedures and installation of the following materials: The laying of bricks made from any material in, under

2

This is a copy printed from the IUBAC Document Management System.



or upon any structure or form of work where bricks are used, whether in the ground, or over its surface, or beneath water, in commercial buildings, rolling mills, iron works, blasts or smelter furnaces, lime or brick kilns, in mines or fortifications and in all underground work, such as sewers, telegraphy, electric and telephone conduits; including the installation of substitutes for brick such as all carbon materials, Karbate, Impervite or mixtures, all acid resistant materials, all terra cotta and porcelain materials, except where the foregoing materials are manufactured to substitute for tile as provided for under the category of Section 8, C of the Codes of the International Union of Bricklayers and Allied Craftworkers. All cutting of joints, pointing, cleaning and cutting brick walls, fireproofing, block, arching terra cotta cutting and setting, the laying and cutting of all tile, plaster, mineral wool, cork, blocks and glass masonry or any substitutes for the above material, the laying of all pipe sewers or water mains and the filling of all joints on the same when such sewers or conduits are of any vitreous material, burnt clay or cement, or any substitute material used for the above purpose, the installation of all brackets and fasteners is the work of the mason exclusively, the cutting and rubbing and grinding of all kinds of bricks and the setting of all cut-stone trimmings on brick buildings, is bricklayer's work. The preparation and erection of plastic castables or any refractory materials is bricklayer's work.

B.  Cleaning, grouting, pointing and other work necessary to achieve and complete the work under the foregoing categories, all waterproofing and black mastic waterproofing, silicone and/or substitutes sandwiched between masonry units in the interior of the wall.

C.  All terra cotta called unit tile in sizes over 6" x 12" regardless of method of installation; all quarry tile over 9"x 9" x 1 1/4" in size, split brick or quarry tile or similar material if bedded and jointed with one operation. The bedding, jointing and pointing of the above materials shall be the work of the craft installing same.

D.  All burnt clay extruded cellular products regardless of trade name or method of installation when used as a veneer on structures; all clay products known as terra cotta tile, unit tile, ceramic veneer and machine-made terra cotta and like materials in sizes larger than 6" x 12", regardless of the method of installation. Where the preponderance of material to be installed is of the above size and when material of lesser sizes is to be used in connection therewith, the bricklayers shall install all such materials. Brick paving comes under bricklayers' trade classifications. The parties acknowledge the Union's claim to screeding of sub base regardless of type of material used.

E.  Grouting of all Masonry Units, all Leveling Plates for steel columns, all machinery and Precast Panels shall apply to all branches of the trade.

F.  The Bricklayer shall perform the complete installation and related finish work of all AACMU. These operations include, but are not limited to; the cutting, fitting and applications of mortar and/or other cementious materials used for the setting and bonding purposes as well as the actual laying of the AACMU block units into position. The routing,

3

This is a copy printed from the IUBAC Document Management System.

NJ 0297

drilling, cutting and patching for all mechanical piping and openings. The preparation, assembly, unloading, selecting or staging of AACMU panels, hooking on, signaling, drilling, cutting, installation of support angles or strut supports, fitting, bedding, landing, setting, leveling, plumbing, aligning, fastening, anchoring (whether by bolt, clip, pin, or weld), insulation, caulking, grouting, patching, cleaning, waterproofing and installation of all AACMU units. This also includes all work operations related to the installation and applications of all coating, covering and veneer systems (both exterior and interior) on all AACMU units. These work operations include, but are not limited to: preparations of walls, the mixing and applications of any and all finish coating materials by any method (i.e. trowel on, machine, spray on, etc.) or any other device deemed necessary to produce the desired finish surface.

## Stone Masonry

A.  Stone Masonry shall consist of, but not be limited to, the following work procedures and installation of the following materials: The laying of all rip rap, rubble work with or without mortar, setting all cut stone, marble, slate or stone work (meaning as to stone, any work manufactured from such foreign or domestic products as are specified and used in the interior or on the exterior of buildings by architects, and customarily called "stone" in the trade.) Cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds and joints, and range ashlar not over 10 inches in height; the dressing of all jambs, corners and ringstones that are roughly dressed upon the beds, joints or reveals and the cutting of a draft upon same for plumbing purposes only; and the cleaning, cutting of joints and pointing of stone work.

B.  This is to apply to all work in buildings, sewers, bridges, railroads, bulkheads, breakwaters, jetties, playgrounds, parks, landscaping and curbing or other public works and to all kinds of stone, particularly to the product of the locality where the work is being done. Stonemasons shall have the right to use all tools which they consider necessary in the performance of their work.

C.  Cleaning, grouting, pointing and other necessary work to achieve and complete the work under the foregoing categories.

## Artificial Masonry

A.  Artificial Masonry shall consist of, but not be limited to, the following work procedures and installation of the following materials: The cutting, setting and pointing of cement blocks and all artificial stone or marble, either interior or exterior, when set by the usual custom of the stone mason and marble setter. All cement that is used for backing up external walls, the building of party walls, columns, girders, beams, floors, stairs and arches and all material substituted for the clay or natural stone products, shall be handled by employees in the

4

⊳ NJ 0297

bargaining unit for which the highest rate of wages shall be demanded.

B.  All artificial masonry, the cutting, setting and pointing of all concrete prefabricated slabs, regardless of dimension size, shall be the work of members of this organization, for which the regular wage scale in the jurisdiction where the work is performed shall be paid.

C.  Cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds and joints, and range ashlar not over ten inches in height, the dressing of all jams, corners and ringstones, joints, or reveals and the cutting of a draft upon same for plumbing purposes only, and the cleaning, cutting of joints and pointing of stonework.

D.  This is to apply to all work on buildings, sewers, bridges, railroads or other public works, and to all kinds of stone, particularly to the products of the locality where the work is being done and the same shall be considered stone masonry.

E.  Bricklayers and stone masons shall have the right to use all tools which they consider necessary in the performance of their work.

F.  All cement that is used for parging up external walls and block units, installing reinforcing rods and door blocks, and all grouting.

G.  The building of party walls, columns, girders, beams, floors, stairs and arches. Gypstell products and cement of precast slabs on roofs or wherever used in building construction of alterations, and all material substituted for the clay or natural stone products. All wall ties and brackets used to anchor brick, block, stone or any type of masonry whether screwed or nailed is the work of the mason, as per the 1962 agreement between the B. & A.C. and Ironworkers herein incorporated by reference.

H.  The laying out and supervising of work for or by the use of any or all of the above materials shall be done by the employees covered hereunder.

### Cement Masons Agreement

A.  Cement masonry shall consist of, but not be limited to, the following work procedures and installation of the following materials: The laying out, screeding and finishing of all cement, concrete, brown stone composition, mastic and gypsum materials, also for fireproofing, waterproofing, cement and composition base and vault lights.

B.  The cutting of all cement and concrete for patching and finishing; the bush hammering of all concrete when cast in place; the operation of cement gun, the nozzle and the finishing of all material applied by the guns, and the operation of the cement floor finishing machines. The cement mason shall have the right to use all tools necessary to complete his work.

C.  The operation of the Lazar Screed Machine shall be performed solely by the Cement Masons.

5

This is a copy printed from the IUBAC Document Management System.

NJ 0297

D.    Concrete constructions, such as buildings, bridges, elevators, smokestacks, curbs, gutters, sidewalks, street paving, alleys and roofs; laying out, setting joists, strips or screed rods for work hereinafter specified; laying and finishing of cement, wearing surfaces of basements, floor yards, driveways, areas and other surfaces where cement finish is to be laid; and where strips have to be set, or material ruled down, or surfaces finished; screening of concrete or fine stuff, asphalt or other preparations that are to be troweled, floated, darbied or bull floated; troweling, floating or finishing of concrete or fire retarding material or waterproofing compound or mixtures; construction of glass vaults or sidewalks, lights, where same is set in cement; excepting the carpenter work, but including pointing, facing and finishing of the surfaces after forms are removed; leveling of all fine materials for facing same; running of all cement base; cutting; patching and finishing of concrete fireproofing on walls, beams, girders and columns; cutting facing and finishing with cement of all concrete surfaces such as arches, beams, girders, walls, pile caps, piers and columns, whether done with trowel, float, gun and nozzle, bushhammer, rubbing or other process; applying cement mortar for damp-proofing, waterproofing for sanitary purposes where not over four (4) feet high whenever cementing with the floor is done in one operation; cutting of all concrete when cement finish is applied; setting of carpet pins and sockets in cement and composition brass or other metallic or wood strips when inserted in floor during the laying of same; rodding and spreading of all concrete and spreading and finishing of all top material; setting of all strips and stakes and grade; pointing, caulking and patching around all steel or metal window frames that touch concrete; handling of the vibrator machine. Washing and treating of all cement surfaces, handling of all machines, trowel machines, riding trowel machines, apparatus or equipment of any kind in connection with or to perform any of the above functions shall be the work of the cement finisher. Any signatory contractor who subcontracts sidewalks and curbs shall, in good faith, inform the subcontractor that said work is within the jurisdiction of the    Bricklayers & Allied Craftworkers,    Local Unions No. 4 & 5.

E.    The pouring of all concrete shall require a mason.

F.    When concrete bucket is used in conjunction with a crane, all safety precautions shall be exercised.

G.    The aligning of all bolts and the setting of all plates shall be performed by the employees covered hereunder.

H.    When flat concrete arches are poured with a crane, a hopper must be used in conjunction with a concrete bucket.

I.    On all high rise buildings an exterior scaffold for the cement masons shall be erected complete with guard rails.

6

This is a copy printed from the IUBAC Document Management System.



NJ 0297

J.   There shall be no cutting of cement masons crews before pull up is completed.

K.   Overtime shall only be with the prior permission of the union and shall be equitably shared by the employees working on the job.

L.   No cement worker working alone shall use a straight edge of more than six feet in length. Where a straight edge is longer than six feet, two men shall be used on a straight edge which is between six and eleven feet in length, one additional man shall be used for every additional four feet or fraction thereof of straight edge. On power straight edges or roller-type straight edges, two men shall be utilized up to fourteen feet and one additional man shall be used for each five feet or fraction thereof.

M.   The casting and pouring of pre-cast slabs when done on the job site shall be the work of a cement mason.

N.   Cement masons are to complete, joint and strike up their work, whether this work is done with cement or caulking compound on any other masonry material.

O.   The cement masons shall supervise the placing or pouring of all concrete. In the event there is a journeyman already working at the job site who is recognized by the Local Union as a competent cement mason, he may be assigned to such work, otherwise a cement mason shall be hired.

P.   When concrete floors are to be hand troweled, the Employer shall provide knee boards such as the type used by cement finishers to handle trowel concrete floors, such knee boards shall measure approximately 12" wide and 30" long or fraction thereof, and shall have handles.

Q.   The following work shall be allotted to the cement masons only: The setting of all screeds and forms to determine the proper grade of concrete when held in place by stakes and/or spreaders shall be done by cement finishers. A screed is a strip of wood, metal, etc., used as a guide for leveling or grading a concrete floor, slab or sidewalk.

R.   Any bulkhead that is one single board in height, and that has no key attached or which is not notched or fitted shall be set and braced or staked by cement finishers, providing same is used as a screed. The term bulkhead shall mean a form or screed erected for the purpose of separating pours of concrete.

S.   The grinding, patching and curing of all floors, the snapping of wall ties, and patching of same and setting of expansion joints.

T.   Steps, Landings, Platforms, etc. The setting of forms for steps, landings, platforms, coping, caps and curbs, except where underforms or centers are required, and the placing of all fine materials for facing same, shall be done by cement masons.

7

NJ 0297

U.  Curing and dustproofing of all floors are to be done by cement masons.  All epoxy, acid and latex work will be an additional $.50 per hour above scale.

V.  The cement mason shall have the right to use all tools necessary to complete his work.  There shall be no restriction as to the use of machinery or tools.

W.  When troweling floors with machine, changing of blades, cleaning and maintaining machine to be done by mason.

X.  No concrete trucks, pumping machine or any other machines are to do any mixing inside any structure without proper ventilation.

Y.  Special Tools: The employer agrees to furnish the following tools for use by his employees: Respirators, goggles, boots, bull floats, brooms, brushes, power chisels, trowel machines, bushhammers, straight edges, rubber floats, rubbing stones, cover tools, special base tools and special edgers.  Gloves furnished when using epoxies, acid, latex floor patching or any irritant.

Z.  All wages, waiting time and general working conditions that apply to bricklayers shall also apply to the cement mason.

## Plastering

A.  Level 5 Gypsum Board Finishing is the work of Plasterers.

Level 5 finishing as specified by the Association of the Wall and Ceiling Industries International (AWCI), Ceiling and Interior Systems Construction Association (CISCSA), Gypsum Association (GA), and Painting and Decorating Contractors of America (PDCA), in their "Levels of Gypsum Board Finish Recommended Specification."

Levels Description: All joints and interior angles shall have tape embedded in joint compound and three separate coats of joint compound applied over all joints, angles, fastener heads, and accessories.  A thin skim board of joint compound, or a material manufactured especially for this purpose shall be applied to the entire surface. The surface shall be smooth and free of tool marks and ridges. Note: It is recommended that the prepared surface be coated with a primer/sealer prior to the application of finish paint.  (See painting specification in this regard.)

The level of finish is recommended where gloss, semi-gloss, enamel or non-textured flat paints are specified or where severe lighting conditions occur.

This highest quality finish is the most effective method to provide a uniform surface and minimize the possibility of joint photographing and of fasteners showing through the final decoration.

8

NJ 0297

The work jurisdiction of the plasterer under level 5: Gypsum board finishing shall be that which has heretofore been performed under this Agreement and is further set forth in constitution of the International Bricklayers and Allied Craftworkers of the United States and Canada. The parties agree to be bound by decisions rendered by the "Green Book" Decision of Record rendered by the Hearings Panel (March 1, 1978) under the plan for the settlement of jurisdictional disputes in the construction industry.

B.     All cement plastering, stone texture, stucco work, and pebble dask work, either exterior or interior, shall be done by plastering employees under this contract.

C.     All plastering, including plastering alterations and repairs, and all cement, cachstone, acoustic or any plastic substitute or artificial or imitative composition for plain surfaces or for moldings, cornices, pilasters panels, capitals, columns, bases, keystones, brackets or centers when applied on any exterior or surface in the usual method of either plastering or stuck work shall be the work of plastering employees.

D.     All ornaments including centers, brackets, trusses and keystone shall be placed in position and pointed by plastering employees who are on the job. Cast ornamentation shall be made in a Union shop. No employee shall work on any operation where the stickling of ornamentation has been sublet.

E.     All moldings, covers, arrises, chamfers and bullnoses shall run in place wherever possible with a regular mould on proper running strips. When moldings or cornices are to be ornamented proper beds shall be run to secure same.

F.     All capitals and bases shall be run on the job if practical to do so.

G.     All templates to be used by the plasterer shall be placed in position by the plasterer.

H.     All plastering shall consist of not less than three coats as scratch, brown and finish. Before the brown coat is applied, the scratch shall be hard and set. The brown coat shall be made true with a straight edge rod in all upright and ceiling angles: the walls and ceilings shall be properly darbied and floated to an even surface and the angles cut out. The finish coat shall be properly gauged and troweled to the required surface and all angles featheredged true. All interior or exterior plastering shall be left straight and true with rod and darby; rod and darby to be furnished by the contractor. The taping and pointing of sheetrock, compo-board, plaster-board, etc., shall be the work of the plasterer.

I.     When Sprayo-Flake or similarly applied acoustics are used the applied acoustic will take the place of the finish coat and will be applied by plastering employees.

J.     The operation of all mechanical plastering or troweling machines, pertaining to plaster and all of its substitutes, shall be the work of the plasterer.

9

This is a copy printed from the IUBAC Document Management System.

NJ 0297

K.  All safety precautions, goggles, shields, and masks, shall be supplied by the contractor for the health and welfare of the plastering employees operating these machines.

L.  Plastering on concrete, fireproofing, brickwork or plaster boards shall be two coat work-brown and finish.

M.  The finish coat may be omitted on cellar ceilings provided the brown coat is floated to an even surface. All EIF systems and all related work.

N.  Finishing of walls and ceilings shall not be done until the screeds, cornices or covers with which they intersect are in place.

O.  Employees shall not install metal corner beads, nor shall they work on any operation where corner beads have been used to form arrises on beams or arches or corners except door or window heads or other continuous openings not over twelve (12) feet in height.

P.  On a scaffold area of one hundred and fifty (150) square feet or over, the mortar board shall be raised 30" from the scaffold on a properly constructed stand. On a scaffold area of less than 150 square feet, the mortar board shall be raised at least 12" from the scaffold on a properly constructed stand. No mortar board shall be raised on blocking, and no mortar board or gauging board shall be more than 4'6" square.

Q.  Where beams are sixteen (16) inches or over in depth, the scaffold shall be  dropped to a suitable height where the plasterers may execute their work in a proper manner.

R.  Any material applied on walls by the plasterers shall not be higher than 6'6" from the floor. Where only the walls have to be plastered, a scaffold 4 planks wide and 6' from the ceiling shall be erected on which the mortar board shall be placed and raised 12" above the scaffold. Positively no hopping planks to be permitted.

S.  There shall be a foreman plasterer on all plastering jobs. Plastering foremen shall meet the requirements for foremen as specified herein, and shall be paid as specified herein.

T.  Plastering foremen shall see that no gauging is made up later than thirty (30) minutes before 12 o'clock and thirty (30) minutes before quitting time.

U.  Plastering work, when sublet, shall be given to a subcontractor who employs employees covered under this contract.

V.  Plastering contractors shall furnish all the materials required for their work including all screed rods, cornice, rods, darbies and feather edges. No subcontractor shall contract for labor only.

10

NJ 0297

W.   Synthetic Plastering Systems: The styrofoam and any other materials which is part of the system that are installed by screws, glue, masonry materials, and including Mechanical System.

## Firebrick

The matters set forth in this section are applicable solely to firebrick work.

A.   On all firebrick jobs, when working with regular firebrick and lay, the bricklayers will be permitted an additional fifteen (15) minutes to wash up or twenty-five (25) minutes when working with a carbon, acid proofing, high temperature clay or any other material out of the ordinary such as colored cements, asphalts, tars, plastics, etc. Solvent for washing up and cleaning of tools will be provided for by the employer.

A bricklayer working with carbon or acid proofing materials shall be given a minimum of five (5) minutes wash-up prior to lunch time.

B.   All scaffolding inside of furnace shall be solid nailed scaffold. Contractors to furnish safety equipment and have same on job site.

Provisions for adequate scaffolding shall be made so that the lead man does not have to climb over the wall to work on the opposite side of the wall. Adequate scaffolding shall mean standard metal tubular scaffolding or wooden scaffolding consisting of a platform of not less than 2" x 10" planks in width, and scaffolding shall remain in place until all paving has been completed.

C.   Clay shall be mixed at the furthermost location of the enclosure where refractory brick is being laid. The location to be selected as to both its physical separation from the work area and to its feasibility for performing the mixing function. In coke oven work a separate enclosure is required. All care shall be exercised to reduce dust.

D.   When bricklayers are employed laying firebrick, the contractor shall pay for the sharpening of their tools required for the work, and all tools shall be sharpened to the satisfaction of the bricklayer. The contractor shall furnish all chisels over twelve (12) inches in length and all saws when required.

E.   On all jobs where conditions are such that a safety man is required by the owner, he shall be mutually agreed upon by the parties. For the safety of the bricklayers, said safety man must be a union bricklayer.

F.   All hot work shall be paid at the rate of double time. Fringe benefits shall be based on hours paid.

11

NJ 0297

One hundred degree (100) Fahrenheit or over shall constitute hot work. When bricklayers are employed on excessive hot work, the contractor shall provide proper counter fatigue aids which shall meet the standards prescribed by the State Medical Board, shall provide proper gloves and protective materials to safeguard bricklayers when they are handling hot work, shall supply wooden shoes or facsimile when working on heated surfaces and contractors shall be responsible for tools, shoes, and clothes of bricklayers which they burn in performance of their duties on said work. Bricklayers must spell each other on all hot work.

Contractor will also be responsible for clothes, tools and/or shoes that are destroyed or damaged on jobs due to exception conditions and materials.

G.    When electrical grinding stones or carborundums are used, bricklayers shall leave that part of the job until the operation is completed. In an enclosed area, suction device to be used to remove dust while bricklayers grind. The employer and union shall arrange to spell bricklayers at ten minute intervals when they are actually performing grinding work.

H.    On stoves and furnaces, or anywhere else where danger of gas exists, approved gas detecting devices will be required.

I.    On all firebrick or acid proofing jobs, the employer shall furnish all bricklayers with gloves.

J.    All general working conditions which apply to the bricklayer shall also apply to all branches of the trade.

K.    In addition, all other assignments mutually agreed upon between the Employer and the Union on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this Agreement.

L.    In the event of territorial jurisdiction or work assignment dispute with any other BAC Local Union, the matter shall be referred to the International Union for binding resolution.

### ARTICLE IV
### UNION RECOGNITION, UNION SECURITY, ACCESS

A.    The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in the classifications of work falling within the jurisdiction of the Union, as defined in Article III of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of collective bargaining as provided for in the Labor Management Relations Act of 1947, as amended.

B.    No later than eight (8) days following the effective date of this Agreement, all present

12

N J   0 2 9 7

employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employee, provided that the Union has given the employee four (4) days notice that his obligation to make payment has not been met and that his delinquency renders him liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union:  (a) if he has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) if he has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

C.   International Union Representatives and the Business Manager and/or other officers of the Union shall have access to the Employer's jobsites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed, provided however, that such representatives shall not unduly interfere with the job progress.

D.   It is recognized and agreed by the parties to this Collective Bargaining Agreement that the Local Union is the authorized collective bargaining agent for all its members in connection with issues related to the wages, working conditions, and employee fringe benefit funds.

**ARTICLE V**
**HIRING PREFERENCE**

The employer agrees that when hiring any employee for any job in the territorial jurisdiction of the agreement he will employ a fair percentage in the territorial jurisdiction of Local No. 4, or Local No. 5 or Local No. 2 of New Jersey.  The employer also agrees that when requesting manpower, they must call the Local Union Office by 4:30 p.m. of the previous day.

**ARTICLE VI**
**STEWARDS**

A.   The Employer shall hire a steward for each branch of the trade appointed by the business manager of the Union on all jobs. The steward shall be a working employee and shall, when appropriate, be granted reasonable time to conduct union business. The steward shall not be laid off without reasonable cause, without first consulting the business manager.

B.   It is the steward's duty to look after the interest of both parties, see that the number of men

13

N J 0 2 9 7

desired by the employer is promptly reported to the business agent, take up all grievances on the job, and try to have the same adjusted. In the event that he cannot, he must report that fact to the business agent. He shall conduct himself in a proper manner at all times when on the projects and shall not be discriminated against, discharged, or laid off for the performance of his duties as such. The steward's employment can only be terminated by the employer after a review of complaint against him between the employer and the business agent.

C.    The first Bricklayers & Allied Craftworkers member shall notify the union at the start of each job.

**ARTICLE VII**
**APPRENTICES**

A.    In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or apprentice improvers is recognized and encouraged by the parties to this Agreement. Apprentices shall be given a minimum of 32 hours per week to perform the work of brick or block provided the work is available. The employer agrees to employ one apprentice for every five journeymen employed on a job site. It is agreed that the Employer shall abide by the National Apprenticeship Standards, developed for masonry craft training, incorporated herein by reference.

B.    All apprentices will be required to attend and successfully complete a pre-job school which shall take place over a period of approximately 12 weeks at a place and at such times as designated by the State Joint Apprenticeship Committee.

C.    After 12 weeks of pre-job training, apprentices shall be required to serve a probationary period of 30 days of employment at the trade during which period no fringe benefit contributions will be required. After satisfactory completion of this period, credit will be given for this time served as part of the three year apprenticeship term. During the probationary period, the termination or cancellation of the apprenticeship agreement may be made by the committee at the request of either party to the agreement. After probationary period, the agreement may be canceled at the request of the apprentice or committee. The committee may cancel the agreement for good cause such as unexcused absences from the job and related training classes if required, lack of progress or interest, and unsafe practices common to the trade. Due notice shall be given to the apprentice with a reasonable opportunity for corrective action. Written notice shall be given to the apprentice and Bureau of Apprenticeship and Training of the final action taken.

D.    Apprentices shall be paid not less than the following percentages of the journeyman's basic wage rate.

|                                      |                                    |
|--------------------------------------|------------------------------------|
| First six months or 500 hours:       | 50% of Journeyman's Basic Wage Rate |
| Second six months or 500 hours:      | 55% of Journeyman's Basic Wage Rate |

14

This is a copy printed from the IUBAC Document Management System.



| Third six months or 500 hours: | 65% of Journeyman's Basic Wage Rate |
| Fourth six months or 500 hours: | 75% of Journeyman's Basic Wage Rate |
| Fifth six months or 500 hours: | 85% of Journeyman's Basic Wage Rate |
| Sixth six months or 500 hours: | 95% of Journeyman's Basic Wage Rate |

During the first year of apprenticeship, after the probationary period, fringe benefit contributions shall be required for the Welfare Fund at 50%. No other fringe benefit contributions shall be required for this period. Deductions for check off dues and BAC PAC should be made according to Schedule "B" attached hereto. Commencing with the second year of apprenticeship (third six-months), fringe benefit contributions and check off deductions shall be made according to Schedule "B" attached hereto.

E.    Apprentices may be required to attend related training classes during period of apprenticeship as directed by the Joint Apprenticeship.

### ARTICLE VIII
### FOREMEN

There shall be a separate foreman on all jobs for each branch of the trade. The employer will determine when the foreman shall not work with tools. Foremen shall be paid the prevailing regular weekly pay (40 hours), between the initial date of employment and the termination date of employment, holidays and inclement weather days included, provided, however, that all foremen must report to work everyday within the work week unless otherwise directed by the Employer. All overtime worked by foremen shall be compensated for at proper overtime rates.

### ARTICLE IX
### TRAVELING CONTRACTORS

When the Employer has any work specified in Article III of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article X of this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

15

This is a copy printed from the IUBAC Document Management System.

NJ 0297

## ARTICLE X
## WAGES, BACPAC, AND LOCAL DUES CHECKOFF

A.     The hourly wage rates for all employees performing work covered under this Agreement shall be as listed on Schedule "B" attached hereto.

B.     The Union shall have the option of allocating a portion of all of the increases in wage rates for the periods beginning November 1, 2002 and all subsequent increases thereafter, among the various benefit funds specified in Article XI.

C.     The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid. If the employee does not sign a dues check off authorization card, he shall report to the union hall to pay the weekly dues.

D.     The Employer agrees to deduct an amount from the pay of each employee, who is a union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC). Deductions shall be in the amount and at the intervals specified on the check-off authorization form. The Employer agrees to transmit BACPAC deductions to the Treasurer of BACPAC, and shall be accompanied by a list of the names of those employees for whom BACPAC deductions have been made and the amount deducted for each employee.

## ARTICLE XI
## JOINTLY TRUSTEED FUNDS

Section 1.
In addition to the wages and other payments herein provided for, the Employer agrees to pay specified contributions to the following designated funds. In the event any of the trust funds to which contributions are required to be made, under this Agreement, is merged with or into another trust fund, the contributions shall be made to the successor fund.

A.     **Bricklayers and Trowel Trades International Pension Fund**
1.     The contribution to the Bricklayers and Trowel Trades International Pension fund (IPF) shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

16

N J   0 2 9 7

2.  The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

B.  **Local Pension Fund**

1.  The contribution to the Local Pension Fund shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the territorial Local Pension Fund which was established under an Agreement and Declaration of Trust. All Local Pension Funds remitted on behalf of an employee shall be forwarded in whole to the employee's Home Local Pension Fund. The Home Local Funds shall credit any excess monies remitted for the Pension Fund to the employee's Annuity Fund.

C.  **Local Annuity Fund**

1.  The contribution to the Local Annuity Fund shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the territorial Local Annuity Fund which was established under an Agreement and Declaration of Trust. All Local Annuity Funds remitted on behalf of an employee shall be forwarded in whole to the employee's Home Local Annuity Fund. The Home Local Funds shall apply any excess monies remitted for the Annuity Fund to the employee's Pension Fund.

D.  **Bricklayers and Allied Craftworkers Statewide Welfare Fund**

1.  The contribution to the Bricklayers and Allied Craftworkers' Statewide Welfare Fund shall be as listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee receives pay.

2.  The payments required above shall be made to the Bricklayers and Allied Craftworkers' Statewide Welfare Fund which was established under an Agreement and Declaration of Trust, dated May 1, 1988.

E.  **Industry Advancement Fund**

The parties hereto do hereby establish an Industry Advancement Fund pursuant to the requirements of the Labor - Management Relations Act, the Internal Revenue Code and all applicable laws and the agreement of the parties for the purpose, in all lawful ways, of promoting the increase of commercial, institutional, public and industrial building construction throughout the State of New Jersey and the adjoining areas within the territorial jurisdiction of the unions by providing building owners, architects, engineers, builders, contractors, private and public funding institutions and agencies, government agencies and

17

This is a copy printed from the IUBAC Document Management System.

NJ 0297

any others, directly or indirectly, with the building construction industry information, data and other information to communicate the advantages of sound, durable and economical construction that will provide a high degree of service, utilization and benefit to the public by the utilization of union affiliated contractors. The purpose of the Fund shall be to foster and promote the continued utilization and expansion of union construction, particularly utilizing union members of the Bricklayers & Allied Craftworkers union, in prospective projects throughout the State of New Jersey.

In order to carry out this agreement, the parties hereto shall execute such agreements of trust and other documents necessary in accordance with law, which documents shall include the following terms which are agreed to and incorporated into this contract:

1.  The Employer shall make contributions for each hour worked by each member of the Bricklayers & Allied Craftworkers union to the Industry Advancement Fund created hereby as listed on Schedule B attached hereto.

2.  The Bricklayers & Allied Craftworkers' Health & Welfare Fund Office shall collect and distribute such funds.

3.  Effective November 1, 2002, the Building Contractors Association of New Jersey and the Masonry Contractors of New Jersey agree to allocate $.02 of the Industry Advancement Fund contribution to the International Council of Employers of Bricklayers & Allied Craftworkers (I.C.E.) Said contribution shall be forward to I.C.E. by the Masonry Contractors of New Jersey. The remaining contribution shall be divided as follows:

    | | |
    |---|---|
    | BCANJ: | 50% |
    | Masonry Contractors of New Jersey: | 50% |

    In such case as the parties opt to discontinue the $.02 allocation to I.C.E., said $.02 contribution shall be distributed equally between the BCANJ and the Masonry Contractors of New Jersey.

4.  The BCANJ and the Masonry Contractors of New Jersey shall utilize said funds in a manner consistent with the terms of the trust including the lease or purchase of materials, supplies and equipment, the lease of premises or purchase of premises, the employment and retention of professional counsel, the engagement of administrative and other employees, and all other appropriate expenses and expenditures which comply with the purposes of the trust and law. However, in all circumstances, it is the intention hereto that the said Fund shall be used to promote the following industry wide activities for the benefit of the contractors utilizing members of the Bricklayers & Allied Craftworkers union including accident prevention, education, research, public relations, industry relations, labor relations, market development,

18

standardization of contracts and specifications and all other such appropriate activities.

5.  Although the Industry Advancement Fund is designated a "contribution" it is expressly understood and agreed that the said sum payable to said Industry Advancement Fund is not intended to be and is not a contribution to employees and no employee of Employer has any proprietary interest in said funds.

6.  The Industry Advancement Fund shall pay the Bricklayers & Allied Craftworkers' Health and Welfare fund 2% of all amounts collected as reimbursement for expenses incurred in connection with the collection services rendered. In addition the Bricklayers & Allied Craftworkers' Health & Welfare Fund shall not be responsible for collection of any delinquent amounts owed by any employer.

F.  **International Masonry Institute (IMI)**

1.  The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/international system.

2.  In order to properly finance IMI programs, the ultimate objective is to provide, through collective bargaining, contributions from the total hourly wage and benefits package, as listed on Schedule "B" attached hereto.

3.  With IMI funding from New Jersey, IMI will be able to provide advertising and promotion, research and development, apprenticeship and training, and labor/management relations programs directed specifically to this area. With these principles in mind, the parties agree to contribute the amounts listed on Schedule "B"

    The payments required above shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, 22 July 1970) and/or to the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust, 6 November 1974).

G.  **New Jersey State Apprentice Fund**

1.  The contribution to the New Jersey State Apprentice Fund shall be listed on Schedule "B" attached hereto for each hour or portion thereof, for which a covered employee

19

This is a copy printed from the IUBAC Document Management System.

N J  0 2 9 7

receives pay. The Apprentice Fund contribution of $.15 shall be suspended for Local No. 2 and deferred to the Defense Fund established by the Union.

2.    The payments required above shall be made to established New Jersey State Fund office which was established under an Agreement and Declaration of Trust.

Section 2.
In order to facilitate the establishment of the same wage and fringe benefit structure within Local No. 5, it is agreed that no other funds other than the Welfare, Pension, International Pension, Annuity, Apprentice, IMI, IAP, Labor Management, BAC PAC and Defense Funds shall be contributed to as of November 1, 1999. During the term of this agreement, the parties agree to establish uniform wages and fringe benefits for Local No. 4 & 5.

Section 3.
The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trust, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trust.

Section 4.
The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

Section 5.
For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

Section 6.
Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeymen, apprentices, helpers, trainees and probationary employees.

Section 7.
All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section 1 of this Article. Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audit.

20

This is a copy printed from the IUBAC Document Management System.

Section 8.

If the Employer fails to make any contribution specified in this Article, within twenty (20) days after the date required by the Trustees, the Union shall take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees. In the event a job is stopped due to delinquent fringe benefit payments by the employer, craftworkers shall be compensated a day's wages for each day the delinquency continues, not to exceed five days. The Employer's liability for payment under this article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

Section 9.

Management's appointments to the aforementioned Jointly Trusteed Funds are to be made equally by the Building Contractors Association of New Jersey and the Masonry Contractors of New Jersey. The Building Contractors Association of New Jersey and the Masonry Contractors of New Jersey shall only have the right to the appointment of trustees if and when the existing Trust Funds of the predecessor local unions of the International Union of Bricklayers and Allied Craftworkers, Local Unions No. 4 and 5 are merged into statewide benefits funds. Neither the Building Contractors Association of New Jersey or the Masonry Contractors of New Jersey shall have the right or authority to appoint trustees to any trust fund of a predecessor local union unless and until a statewide merger of the Trust Funds occur, except if trustees are currently appointed by either the Building Contractors Association of New Jersey or the Masonry Contractors of New Jersey, that authority shall remain.

Section 10.

The Labor/Management Fund established under an Agreement and Declaration of Trust, shall be used to enhance the economic development and competitiveness of the unionized masonry industry, to assure the effective enforcement of prevailing wage laws and to provide for stable labor-management relations. The parties to this agreement shall appoint trustees to this fund in the same manner in which appointments are made to the Statewide Welfare Fund.

Section 11.

The parties agree to establish a Committee to explore the concept and funding mechanism for a Market Recovery Program.

## ARTICLE XII
## HOURS WORK, OVERTIME, SHIFTS, AND HOLIDAYS

A.     The standard work day shall consist of eight (8) hours of work with starting and quitting times of either 7:00 a.m. to 3:30 p.m., or 8:00 a.m. to 4:30 p.m., unless otherwise mutually agreed to by the parties, with a 30-minute unpaid lunch hour occurring in the middle of the shift. The standard work week shall consist of five standard work days commencing on

21

N J    0 2 9 7

Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

B.    All time worked before and after the established eight (8) hour day, Monday through Friday, and all time worked on Saturday shall be paid at the rate of time and one-half. All hours worked on Sundays and holidays shall be paid at the double time rate. If a craftworker works through any portion of their lunch they shall be paid one hour.

If any of the following trades: Carpenters, Laborers, Ironworkers or Operating Engineers Locals, with whom the BCANJ negotiates, receive a more beneficial overtime rate, the Bricklayers will be paid the higher overtime rate.

C.    A make-up day may be worked on Saturday providing it is mutually agreed to by the union and the employer and provided that the following conditions are satisfied:

    1.    A make-up day on Saturday can be utilized provided 24 or more hours are worked during the course of the calendar work week, Monday through Friday.

    2.    It is not mandatory for an employee to work on a make-up day and it is at their choice and discretion. No negative actions or retribution shall be taken by the employer against any employee who chooses not to work a make-up day.

    3.    The sole reason for the loss of hours during the calendar work week must be weather conditions to qualify for a make-up day.

    4.    Any time worked before the established starting time or after the established quitting time on a make-up day shall be paid at the applicable overtime rate. Any hours worked on a Saturday make-up day that exceed 40 hours shall be paid at the applicable overtime rate.

    5.    If employees are unable to work a make-up day, the local union shall be given the preference to supply the remainder of the employees needed for that day.

    6.    There shall be no addition to the previously established crew size for the make-up day.

Any employer who violates the above provisions shall be prohibited from utilizing the make-up day for the duration of this Collective Bargaining Agreement. The employer has the right to file an appeal with the Joint Arbitration Board defined in Article XV of this Collective Bargaining Agreement. Said appeal shall be heard within five (5) days from the date filed. During the appeal process the employer shall be prohibited from utilizing the make-up day provision.

D.    The parties to this Agreement recognize the desirability and in some cases absolute necessity

22

This is a copy printed from the IUBAC Document Management System.

of coordinating the shifts to be worked with the other trades involved on the project and the customer's work schedule. If shift work is necessary and it is mutually agreed to by the union and the employer, the following schedule shall prevail:

When a two shift schedule (including a day shift) is established, the first or day shift shall be established on an eight (8) hour basis. The second shift shall be established on an eight (8) hour basis and paid the base rate plus 15%.

When a three shift schedule is established, and mutually agreed to by the Employer and the Union, the following conditions shall prevail. The day shift shall be established on an eight (8) hour basis, the second shift shall be established on a seven and one-half (7 ½) hour basis, and the third shift shall be established on a seven (7) hour basis. The first shift shall receive the base or regular hourly rate. The second shift shall receive the base hourly rate plus 15%. The third shift shall receive the base hourly rate plus 20%.

When there is no day shift and a second shift or third shift is established and mutually agreed to by the Employer and the Union, the following conditions shall prevail. The second shift shall be established on an eight (8) hour basis. The third shift shall be established on an eight (8) hour basis. The second shift shall receive the base hourly rate plus 15%. The third shift shall receive the base hourly rate plus 20%.

The percentage premium, when added to the base rate, shall be termed the regular hourly rate. Shift hours for the second and third shifts shall be such as to conform to the day shift and in no case shall an employee work on more than one shift within a 24 hour period. When an irregular shift must be established, the percentage premium shall be 15% above the base rate.

All time worked before and after a regularly established shift shall be paid at the applicable overtime rate. When a portion of a regular established shift works into Saturday, Sunday or a Holiday, that time worked shall be paid at the established shift rate.

E.    The Employer agrees to recognize the following holidays: New Year's Day, President's Day, Memorial Day, Fourth of July, Labor Day, Presidential Election Day, Veterans' Day, Thanksgiving Day, and Christmas Day. Holidays falling on a Sunday shall be observed the following Monday. The above holidays are subject to renegotiation based upon agreements established with other trades.

## ARTICLE XIII
## PAYMENT OF WAGES & FRINGE BENEFITS

All employees working under this Agreement shall be paid in cash or by check weekly on Thursday, or another day if mutually agreed between the business agent and the employer, before quitting time and within 72 hours after the closing of the pay for the week. When employees are unable to work

23

on pay day due to inclement weather, the employee shall be paid before 12 noon in absence of reasonable cause for delay. An employee who has worked more than three days who is being laid off shall be given his final paycheck in full for all hours of employment one hour before layoff." When working overtime, the one hour notice of layoff does not apply. At the discretion of the Union, out of state contractors may be required to have payroll checks drawn on a local bank. Payroll checks will be delivered to the job site. In the event an employer issues a paycheck and there are insufficient funds in the employer's account, the employer, on the next working day, will bring either cash or cashiers checks to the jobsite to cover the paychecks and all penalties. Failure to do so will result in immediate withdrawal of all craftworkers from the job. Employees will be compensated by the employer for all lost time until the matter is resolved. If a second violation occurs, all payrolls shall be in either the form of cash or cashiers checks. Fringe benefits will be paid on a weekly basis, except that Association Members may pay monthly. Monthly payments shall be due to the fund(s) on or before the fifteenth day of the month immediately following the month during which the contributions were earned. Should an Association Member become delinquent, they may be required by the trustees of the benefits funds to remit weekly payments.

## ARTICLE XIV
## WORKING CONDITIONS

A.    Overhead Protection: If any work is being performed overhead, all Employees must be protected on all outside scaffolds by two inch (2") planks, a covering shall be supplied over all stairwells, hatches, shafts, etc., no more than two (2) stories overhead and two (2) stories below in shafts.

B.    Hard hats are to be supplied by each employer. Failure to wear hard hats is cause for dismissal.

C.    Lines: All contractors must furnish the men with lines. The lines must not be raised more than one (1) course at a time. No bricklayer shall spread mortar before the line has been raised. However, a trig brick can be raised one (1) course before raising the line. Lines on a double unit wall shall be used on both sides of a wall eight inches (8") or over in thickness and on all units of masonry over four (4) feet in length.

D.    Portable Sanitation Units: Suitable portable sanitation units shall be erected on all jobs which shall be kept in sanitary condition. Portable sanitation units shall be built in accordance with State or Municipal health laws.

E.    Cutting Tools: Where employees are employed on cutting masonry, the employer shall have all cutting tools sharpened.

F.    In order to protect the health and safety of employees against the effects of silicosis and other respiratory diseases, the dry cutting of masonry units by the means of hand-held, gas-powered, or electrical, portable "chop saws" and skill saws, and the dry grinding of masonry

24

This is a copy printed from the IUBAC Document Management System.

materials shall be prohibited on all masonry projects. The only exception to this provision will be when the Union and employer determine that the use of water is not feasible. When the Union and employer identify such tasks, the employer must ensure that the engineering and work practice controls are in place to control the dust: such as a vacuum, with high efficiency particulate air (HEPA) filter or another dust control system. It is agreed that in order to protect the health and safety of employees the dry cutting of masonry units by means of hand-held, gas powered or electrical, portable "chop saws" and skill saws, and the dry grinding of masonry materials shall be done in a designated area away from craftworkers if at all possible. It is the responsibility of the employee to adhere to the established restrictions for said designated areas.

Respirators should only be used as the primary method of protection if other engineering and work practice controls are not feasible. When the respirators are used, in accordance with the OSHA regulations, employers must provide workers with full-face respirators as part of a complete respiratory program that includes the proper selection of respiratory cartridges, and training and fit-testing to ensure that the worker is able to wear a respirator. It is the employee's responsibility to utilize proper protection.

Additionally, in the event the Union and the employer determine that dry-cutting or grinding is necessary, the contractor agrees to perform periodic air monitoring to ensure that the silica exposure levels do not exceed OSHA permissible exposure limit. Failure to comply will result in work stoppage. The employee operating the machine shall be allowed ten (10) minutes to clean up at 12:00 noon and quitting time.

Employees engaged in wet cutting masonry products will be furnished elbow length gloves, an apron and goggles. No employee shall operate a wet saw unless provided with a wooden platform on which to stand and the saw is properly grounded.

G.    Cutting and Mechanical Devices: Where air guns or other mechanical devices are used for the purpose of cutting chases, opening, etc., in brick work, such gun or device shall not exceed fifteen (15) lbs. weight. When such device exceeds fifteen (15) lbs., the employer may use a laborer to assist the bricklayer in handling the gun, but there shall always be one bricklayer on each gun in use. All cutting, when done by hammer and chisel, shall be done exclusively by the bricklayer. Where a bull and sledge hammer is used, there shall be a composite crew of bricklayers and laborers. (The bricklayer foreman shall have complete authority over all men employed in this phase of work.) All cutting out of brick work, pointing, washing down, caulking cement and lime waterproofing washing of brick, or slabs, used in floor arches shall be done by bricklayers, and where scaffolding is used in the above work wire rope shall be used.

H.    Pointing: All pointing and joining of brick work shall be done by journeymen who built same, if possible.

25

This is a copy printed from the IUBAC Document Management System.

ᐁ N J ᖱ 2 ᖳ ᠌

I.  Cement Block: Bricklayers and stone masons to set all cement blocks and all masonry units.

J.  Cork Block: All cork block (Styrofoam Sheets), and substitutes thereof, shall be laid by bricklayers.

K.  Caulking: All pointing and caulking of windows with cement or composition to be done by bricklayers, by either gun, trowel or any other method.

L.  Stone Work: All renovation, cleaning, and pointing of stone to be done by this union.

M.  The setting, aligning and erection of all precast slabs and the setting and leveling of all bearing plates for structural steel or machinery shall be done by the members of the above local union.

N.  Composite crew on all precast panels. Setting of all other masonry panels shall be the work of BAC Members.

O.  All brick or block panels shall be erected by union bricklayers.

P.  Waterproofing: All transparent waterproofing applied to brick or stone work with brush or spray to be done by bricklayers.

Q.  There are to be two men on all blocks weighing 40 lbs. or more.

R.  Scaffolding: No block 6" or over in size shall be built more than six (6) courses in scaffold height. Where blocks of 100 lbs. or over are used, a pony scaffold is to be erected when the wall is three (3) feet high, for the easier laying of these blocks to the next scaffold height. When a BAC member works on a swing scaffold as part of a composite crew, they shall receive the same premium differential as the other trades performing work on the same swing scaffold.

S.  Water: Water containers and sanitary drinking cups shall be provided on all jobs to be furnished by all contractors at all times.

T.  Shanty and Stoves: Where there are not more than ten (10) men employed on a job, a shanty house shall be erected exclusively for the bricklayer, and it shall contain not less than eighty (80) square feet of floor space. Where there are more than ten (10) men and not more than twenty (20) men, the shanty house shall contain not less than one hundred and fifty (150) square feet of floor space. Where there are more than twenty (20) men and not more than thirty (30) men it shall contain not less than two hundred (200) square feet of floor space but where there are more than thirty (30) men employed the same proportion shall apply. Where there is a shanty and no elevator located in the building it shall not be above the ground floor unless elevator is provided except on alterations where it will be placed to suit the convenience of the contractor.

This is a copy printed from the IUBAC Document Management System.

U. Ample provision shall be made to protect all bricklayers levels on all outside scaffolds.

V. It shall be deemed unsafe to run any brick work up more than 6 courses or 16" whichever is less without backing up in cavity walls or any masonry walls which does not utilize a brick header course.

W. Contractors shall provide a two foot clear, planked working area beyond the building wall when bricklayers or stone masons are working off new footing on or below grade.

X. There shall be a clothing allowance of fifty cents (.50) per hour minimum on all fire brick work paid by contractor.

Y. There will be one coffee break in the morning not to exceed ten (10) minutes.

Z. The employee shall be allowed five (5) minutes to clean up prior to quitting time.

AA. All mortar tubs will be raised to at least sixteen inches, not to exceed thirty inches.

BB. All rubber gloves and goggles to be furnished by the contractor for all washing down.

CC. All work on high stacks, the contractor will pay a premium wage of 22% above the wage scale.

DD. All scaffolds will be kept at least four (4) inches below the wall.

EE. If an employee works past the full hour and must stop because of inclement weather conditions, he shall be paid for the full hour, but is not to leave the job until expiration of said hour. No employee shall start work on the half hour.

FF. If an employee reports to work and is not started but requested to stay on the job by the contractor, the employee shall be paid for all time prior to starting or until informed that no work shall be performed.

GG. In the event that due to failure or breakdown of machinery or equipment a work stoppage occurs between starting time and 12 noon, men shall be paid until noon. Employees must, however, remain on the job until noon. In the event that due to failure or breakdown of machinery or equipment a work stoppage occurs between 12:30 p.m. and 3:30 or 4:30 p.m., employees shall be paid until 3:30 or 4:30 p.m. Employees must remain on the job until 3:30 or 4:30 p.m.

HH. When a job does not start at the regular starting time, it will be the duty of the Foreman to notify the Shop Steward, personally, two hours after the designated start regarding the work conditions. It is clearly understood and agreed the employer will not send anyone to work

27

This is a copy printed from the IUBAC Document Management System.

NJ 0297

on a job working during inclement weather unless all of the men regularly employed on that job who showed up for work at starting time are started first. Nothing herein contained shall be construed to deny the saw men, lay-out men and steward regularly employed on the job from working at anytime at their respective job assignments if they are needed.

II.     When masons work overtime at the direction of the employer or foreman, they shall receive at least one hour's pay at the applicable overtime rate. Fractions of an hour to be considered a full hour.

JJ.     Employees who may be required to work overtime beyond 6:00 p.m. shall be permitted to take an unpaid one-half hour meal period on the job between 6:00 p.m. and 7:00 p.m. The employer may split a crew for the dinner period.

## ARTICLE XV
## GRIEVANCE PROCEDURE

A.     The parties to this Agreement shall establish a Joint Arbitration Board consisting of two representatives of the Building Contractors Association of New Jersey, two representatives of the Mason Contractors of New Jersey and four representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. The boards shall meet at least once a month, or on call, to settle complaints, abuses or grievances. It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendments shall submit same in writing to the Board. The Employer and union representatives at a session shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

B.     It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the union or to the attention of the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

C.     Grievances shall be handled in the following manner:

1.     The grievance shall be referred to the jobsite union steward and to an employer representative for adjustment.

2.     If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the Business Manager of the Union and the Employer.

28

This is a copy printed from the IUBAC Document Management System.



3.  If the grievance cannot be settled pursuant to paragraph 2 of this Section within three (3) working days excluding weekends and holidays, the grievance shall be submitted within 48 hours to the Joint Arbitration Board for consideration and settlement.

4.  If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working day, not including weekends and holidays, following a referral of the grievance to the Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Arbitration Board cannot agree on an impartial arbitrator, then the matter shall be submitted to the American Arbitration Association for a decision. All expenses of the Impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

D.  When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provided, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section C of this Article, the parties agree that such settlements shall not be precedent-setting.

E.  The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure. However, failure to process a grievance , or failure to respond within the time limits provided above, without a written request for an extension of time, shall be deemed a waiver of such grievance without prejudice and shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

## JURISDICTIONAL DISPUTES

A.  In order to avoid jurisdictional disputes which have such a demoralizing effect upon the progress of the construction work, it is agreed that only B.A.C. Members will be employed on work which is recognized as coming under the jurisdiction of the International Union of Bricklayers and Allied Craftworkers as:

1.  Granted by the A.F.L. - C.I.O.

2.  Determined by a Joint Board consisting of four representatives from the Local Unions, two representatives from the Building Contractors Association of New Jersey and two representatives from the Mason Contractors of New Jersey.

3.  As established by practice of Employers within the area designated herein whenever (1) or (2) above are not applicable;

29

This is a copy printed from the IUBAC Document Management System.



4.  It is the intent of the parties that wherever a job decision shall be deemed to be strongly indicative of the area practice, the Bricklayers & Allied Craftworkers Local Unions will advise all personnel affected to make future assignments accordingly.

5.  It is further the intent of the parties hereto that wherever possible, and whenever the contractor can reasonably foresee a jurisdictional dispute, the contractor will call a pre-job conference with the Local concerned and the contractors agree that when no agreement is reached, at the request of the Union, the contractor will join in the submission of the matter to the Joint Board. In the meantime, the work shall proceed by the craft in possession of the work.

B.  The Employer and the Unions agree to be governed by the terms and conditions of the Agreement, effective May 1, 1995, as amended, creating the Joint Board for the settlement of any jurisdictional dispute; and the decisions of the Joint Board will be followed in good faith.

## ARTICLE XVI
## SUBCONTRACTING

A.  The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

B.  All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE XVII
## PRESERVATION OF WORK (Anti-Double Breasting)

A.  In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

30

NJ 0297

B.  All charges of violations of Section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XV of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XV is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

C.  If, as a result of violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section B above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XVIII
## NO-STRIKE/NO-LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XIV have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fide collective bargaining.

## ARTICLE XIX
## SEPARABILITY AND SAVINGS PROVISION

It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect.

In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement,

31

incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

## ARTICLE XX
### MORE FAVORABLE CONDITIONS

The Union hereby agrees that if it affords any conditions of a more favorable means to any other employer with whom it has a collective bargaining agreement who performs the same or similar work, that said more favorable condition shall automatically be incorporated in this Agreement and be afforded all members of the Association covered hereunder.

## ARTICLE XXI
### GENERAL UNDERSTANDING

The Union agrees to cooperate with the Employer in meeting conditions peculiar to the job in which it may be engaged. It will at all times meet and confer with the Employer, and similarly, the Employer will at all times meet with the Union respecting any questions or misunderstandings that may arise under the performance of this Agreement.

This Agreement constitutes the entire agreement between the parties, and any local or area practices or working rules which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement.

Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a), representative of the employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents the majority of the bargaining unit Employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future job sites within that jurisdiction of the Union.

The employer agrees that if it has not previously done so, at any time during this agreement it will, upon the Union's request for recognition as the Section 9(a) representative of the employees in the bargaining unit described herein, and upon the union's submission of proof of majority support by such employees, voluntarily recognize the union as the exclusive representative as defined in Section 9 (a) of the National Labor Relations Act, of all the employees within the bargaining unit on all present and future jobsites within the jurisdiction of the Union. When the Union has requested recognition as majority representative, the employers recognition will be based on the union's proof or offer to submit proof. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

32

This is a copy printed from the IUBAC Document Management System.

Memorandum of Understanding
Bricklayers & Allied Craftworkers, Local Unions No. 4, 5 & 2

NJ  0297

**IN WITNESS WHEREOF,** we the authorized officers of the Building Contractors Association of New Jersey, the Masonry Contractors of New Jersey and the Bricklayers & Allied Craftworkers, Local Unions No. 4 , 5 & 2  have hereunto set our hands and seals this        day of October, 2002.

*Authorized Management Representatives*

Joseph Natoli, BCANJ

Jack Kocsis, Jr., BCANJ

Michael Schmerbeck, MC of NJ

Michael Peterson, BCA/AC

*Authorized Union Representatives*

Gerald Della Salla, Local No. 4

Michael Perrone, Local No. 5

Thomas F. Rhoades, Local No.2

33

Mar-24-03 03:39P BAC Local 5 NJ

The undersigned employer agrees to agreement:

| DOOLEY AND KRETSCHMAN INC |
| 278850 0033 NJ 1 |

_Dooley + Kretschman_
**Name of Firm**

_1700 A Industrial Hwy_
**Physical Street Address**

_CINNAMINSON_            _NJ_         _08077_
**City**                 **State**    **Zip Code**

_856- 829- 8787_         _856- 829-2650_
**Phone Number**         **Fax Number**

_23-2615563_
**Employers Federal Identification Number**

_232-615563/000_
**New Jersey Employment Compensation Number**

_Claredon Insurance Co._
**Workmen's Compensation Insurance Carrier**

_3-26-03_
**Date**

### SIGNATURE OF PARTIES

_Joseph P. Dooley_      _Presidt_
**Member of Firm Signature**    **Printed Name**    **Title**

_Michael R. Pearuse_    _Bus. Mgr._ 3/24/03
**Union Officer Signature**    **Printed Name**    **Title**

_____    _____
**Field Representative Signature**    **Printed Name**

### PLEASE COMPLETE AND REMIT TO:

**Bricklayers & Allied Craftworkers Local No 5**
3281 Route 206, Suite 3
Bordentown, New Jersey 08505
(609) 324-0500
Fax- (609) 324-1505

**EFFECTIVE NOVEMBER 1, 2002 THROUGH OCTOBER 31, 2007**

This is a copy printed from the IUBAC Document Management System.